ARKANSAS FERTILIZER CO. v. UNITED STATES (INTERSTATE COMMERCE COMMISSION, Intervener).

(Commerce Court. December 5, 1911.)

No. 42.

1. COMMERCE (§ 92*)—COMMERCE COURT—JURISDICTION—"ORDER" OF INTERSTATE COMMERCE COMMISSION.

The Commerce Court has jurisdiction of a suit to annul an "order" of the Interstate Commerce Commission which either awards or denies reparation to a complainant under Interstate Commerce Act Feb. 4, 1887, c. 104, § 16, 24 Stat. 384 (U. S. Comp. St. 1901, p. 3165), as amended by Act June 29, 1906, c. 3591, § 5, 34 Stat. 590 (U. S. Comp. St. Supp. 1909, p. 1159).

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 92.*

For other definitions, see Words and Phrases, vol. 6, pp. 5017–5023; vol. 8, p. 7739.

Jurisdiction of federal courts of suits under Interstate Commerce Act, see note to Bailey v. Mosher, 11 C. C. A. 318.]

2. COMMERCE (§ 87*)—INTERSTATE COMMERCE COMMISSION—COMPLAINTS FOR DAMAGES—LIMITATION—"ACCRUE"—"CAUSE OF ACTION."

Under the provision of Interstate Commerce Act Feb. 4, 1887, c. 104, § 16, 24 Stat. 384 (U. S. Comp. St. 1901, p. 3165), as amended by Act June 29, 1906, c. 3591, § 5, 34 Stat. 590 (U. S. Comp. St. Supp. 1909, p. 1159), that claims for the recovery of damages shall be filed with the Interstate Commerce Commission "within two years from the time the cause of action accrues and not after," as applied to the claim of a shipper to recover damages on the ground that the published and filed rate of a railroad company under which he made a shipment was unjust and unreasonable, the cause of action accrued when the shipment terminated and complainant became liable for the freight, and not when he actually paid it. A contrary construction would enable a shipper and carrier through collusive delay in payment of a freight charge which, while the rate remains in force, is made obligatory by the statute, to give such shipper a preference over others which it was the special purpose of the amendments of the acts to prevent. Per Knapp, Presiding Judge; Mack, Judge, concurring; and Carland and Hunt, Judges, dissenting.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 87.*

For other definitions, see Words and Phrases, vol. 1, pp. 101–103; vol. 2, pp. 1015–1019; vol. 8, p. 7598.]

3. COMMERCE (§ 87*)—INTERSTATE COMMERCE COMMISSION—ORDERS—COMMERCE COURT—JURISDICTION.

A petition by a carrier to the Interstate Commerce Commission for leave to refund to a shipper a portion of a freight charge paid which it admits to have been excessive is not the equivalent of a complaint

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for reparation by the shipper under Interstate Commerce Act Feb. 4, 1887, c. 104, § 13, 24 Stat. 383 (U. S. Comp. St. 1901, p. 3164), and a denial of the petition by the Commission for want of jurisdiction, because under its construction of the statute the claim of the shipper was barred by limitation, does not constitute an order adverse to the shipper which can be made the basis of a suit by him for relief in the Commerce Court. Per Archbald, Judge, Solus.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 87.*]

Petition by the Arkansas Fertilizer Company against the United States, respondent, and the Interstate Commerce Commission intervening respondent. On final hearing. Petition dismissed.

E. L. McHaney, for petitioner.

James A. Fowler, Asst. Atty. Gen., and Blackburn Esterline, Special Asst. Atty. Gen., for the United States.

Charles W. Needham, for Interstate Commerce Commission.

Before KNAPP, Presiding Judge, and ARCHBALD, CARLAND, HUNT, and MACK, Associate Judges.

KNAPP, Presiding Judge. This case involves the meaning and application of a provision in the sixteenth section of the act to regulate commerce, as amended in 1906, which reads as follows:

"All complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues."

What is the "cause of action" here intended to be defined, and when does it "accrue"?

The typical facts appearing in the record disclose the concrete form in which the question is now presented. In February, 1907, the petitioner shipped a car load of fertilizer from Little Rock, Ark., to Ravanna, Ark., billed to one A. S. Stuckey. The shipment was routed over the St. Louis, Iron Mountain & Southern, and the Kansas City Southern, and moved for a short distance in the state of Texas, thereby making it interstate. On February 15, 1907, the petitioner prepaid charges at the rate of 15¾ cents per 100 pounds, amounting to $85.05, and later the delivering carrier demanded the additional sum of $66.15, based on a rate of 28 cents, which was the lawful tariff rate in force at the time the shipment moved, and this sum was paid by petitioner on March 30, 1910.

In September, 1910, some three years and seven months after the transportation service was performed, the delivering carrier, in behalf of petitioner, applied to the Interstate Commerce Commission for authority to refund the sum of $59.40 (which would result in a charge of 17 cents on the shipment in question), making the express admission that the tariff rate of 28 cents, which petitioner had paid as above stated, was unjust and unreasonable, and agreeing to maintain for the required period a rate of 17 cents, which was established by a tariff filed with the Commission about that time. Following its ruling in Blinn Lumber Co. v. Southern Pacific Co., 18 Interst. Com. Com'n 430, the Commission denied the application on the ground that it was without jurisdiction to allow the refund, because more than

two years had intervened between delivery of the shipment to the consignee and the filing of the claim for reparation. Thereafter and on June 5, 1911, the petition herein was filed to set aside and annul the order of the Commission. The United States filed an answer, and the Commission also intervened and answered. The petitioner thereupon filed motions to dismiss the answers as not stating a defense to the cause of action alleged in the petition. On this record, and the briefs of counsel, the case was submitted without oral argument.

[1] The answer of the United States, which is in the nature of a special demurrer, alleges that the facts set forth in the petition do not constitute a cause of action, and also alleges that this court is without jurisdiction to hear and determine the case. Jurisdiction is challenged on the grounds: (1) That the Commission has made no "order" respecting petitioner's claim, and consequently there is no basis for the suit; and (2) that the refusal of the Commission to authorize the refund, if it be deemed in any sense an order, relates to the payment of money only and is therefore not within our jurisdiction. The latter objection is disposed of by the decision just rendered in Southern Railway Co. et al. v. United States et al. (No. 44) 193 Fed. 664, and the reasons stated for the conclusion therein reached need not here be repeated. It is only necessary to add that if this court has jurisdiction to set aside an order of the Commission which awards reparation, it has also jurisdiction to set aside an order which denies reparation.

The form in which the Commission's refusal was expressed in this instance is not shown by the record, nor does it seem to us at all important, since the petition alleges, and the answer of the Commission admits, that leave to refund was denied without consideration of the merits of the claim, and solely because its allowance was prevented by the statutory provision above quoted. While the sixth paragraph of the petition, and perhaps the prayer for relief, may be open to technical criticism, it appears plain to us that the pleadings taken together sufficiently define, and therefore require us to decide, the real matter in controversy between the parties, namely, whether the Commission was correct in its construction of the law in the Blinn Case and in applying that construction to petitioner's claim.

[2] What, then, is the true meaning of the so-called limitation? Did it deprive the Commission of authority to permit or require these carriers to repay the amount which they had collected in excess of a reasonable charge? If so, the Commission was right and the petition herein should be dismissed; if not, the order in question —for that which has all the effect of an order may be treated as an order—should be set aside to the end that the Commission may be free to consider petitioner's claim upon its merits.

The contention of petitioner is easily comprehended and may be summarized as follows: There must be some injury for which redress is afforded by "the recovery of damages." If an excessive rate is charged, the injury occurs when payment of that rate is enforced, and the measure of recoverable damage is the excess of such payment above a reasonable rate. But until the shipper is compelled

to pay the excessive amount no injury has been inflicted, and conse-quently no "complaint" can be made. Therefore a "cause of action" does not arise, because there is no damage, until the unreasonable rate has been actually collected. In this case the balance of the tariff rate, which was a concededly excessive rate, was paid in March, 1910, a little less than six months before the delivering carrier applied for leave to refund; and we regard the application then made, since it was so regarded by the Commission, as the equivalent of filing a complaint.

We recognize the force of this contention, which is undoubtedly sustained by the common-law rule and numerous decisions in which that rule has been upheld. Indeed, it may be admitted that, if this case is governed by the principle which obtains in the fields of con-tract litigation, the ruling of the Commission involved an error of law which the courts may be invoked to correct.

But we are of opinion that the question here presented is not con-trolled by the general rule, and that the Commission correctly con-strued the limiting provision in the Blinn Case and therefore properly rejected petitioner's claim. This provision in the sixteenth section, inserted in 1906, is only an incidental and relatively unimportant part of a comprehensive scheme of regulation which was inaugurated by the act of 1887 and has been expanded and strengthened by successive amendments. The pervading purpose of that scheme is the pre-vention of unjust discriminations and the enforcement of equal treat-ment as between all shippers in like situation. Clearly, the provision in question should be so construed as to advance that purpose if such a construction be in any view permissible.

But if the construction contended for by petitioner is sustained it follows that judicial sanction would be given to certain preferences of obvious injustice and the aim of the law as a whole thereby meas-urably defeated. In other words, the limitation under review would be held to impair the beneficial purposes of the act by creating an obnoxious and indefensible exception to its requirements. This pro-vision, moreover, in common with other amendments adopted at the same time, was designed to make the law in its entirety more effica-cious, and also designed to protect from depletion, after the lapse of two years, railway earnings resulting from the application of tariff charges. To hold that the ruling of the Commission was erroneous would therefore not only legalize a device for offensive favoritism, but also to an extent subvert the special purpose for which this amendment was enacted. It is difficult to believe that such a result was ever intended.

In construing remedial statutes, especially those of a generic char-acter, courts have not hesitated to restrict and modify the ordinary meaning of words and phrases, and even of entire paragraphs, in order to harmonize conflicting or inconsistent provisions and so enable all of them to contribute in proper degree to the object sought to be accomplished. Instances of this kind are too familiar to require citation. Indeed, the Supreme Court, in the Abilene Case, 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, declared that a right of action

as old as the common law had been taken away by the act to regulate commerce, since otherwise full effect could not be given to the purpose of that statute to prevent discriminations. Bearing in mind how rarely suits were brought to recover damages for excessive railroad charges, and how easily collusive delay in the payment of freight bills could be utilized, as the Commission points out, to give preferences which are actual rebates, it seems well within precedent to reject petitioner's contention and to uphold a construction under which, as Commissioner Lane observes:

"The act becomes workable and enforceable from the standpoint of shipper, carrier, and the Commission itself."

Any serious doubt in this case should disappear, as we think, when once it is clearly perceived that the relations between shipper and carrier are no longer contract relations; that the rights and obligations of both are fixed, not by mutual agreement, but by the mandate of the statute: that the duty of the shipper to pay and of the carrier to collect the tariff rate in force when the transportation takes place, even though that rate be grossly excessive, is a duty imposed by legislative enactment; and that it is beyond the power of the parties to evade or modify this duty by any consent or understanding. In other words, since the obligation to pay the tariff charge springs from a positive law, the extension of credit because such charge is claimed or admitted to be unreasonable cannot be granted by the carrier or accepted by the shipper. It follows that the reasons for the general rule above adverted to are altogether wanting in the case here presented, and therefore the rule itself should be denied application.

Moreover, when all the provisions of the act and supporting laws are taken together, and the doctrine of the Abilene Case kept in mind, it becomes evident that the basis of a claim for reparation, which is the kind of "action" referred to in the limitation clause, is the existence at the time the claimant's shipments moved of an unreasonable rate established by the carrier's tariff and imposed upon all shippers alike; and that there can be no "recovery of damages" except as incident to a determination by the Commission that such rate was unreasonable, including the extent to which it was unreasonable, and the fixing of a lawful rate for the future, unless the carrier has in the meantime voluntarily made the proper reduction. The real cause of action is the publication of a rate that is unlawful because excessive, and it "accrues" as to a particular shipper when his property is transported under that rate. As Commissioner Harlan says in his concurring report in the Blinn Case:

"The unlawfulness of the rate is the shipper's cause of action, and the amount actually paid by him in excess of a lawful rate is but the measure of his damages. The wrong done to the shipper, with respect to shipments already made, arises out of the publication by the carrier of an unlawful rate and the obligation imposed upon the shipper by the publication to pay that rate. The bar of the statute therefore commences to run when the obligation of the shipper to pay the unlawful rate has become a completed obligation, namely, upon the delivery of the shipment to him at destination, and manifestly cannot be postponed by the failure of the shipper to fulfill his obligation. It is true that there can be no recovery of damages

unless the unlawful rate has been paid; nevertheless, the inquiry in any such proceeding is whether the published rate was excessive, and, if so, to what extent. That is the issue, the cause of action, as well as the subject-matter of the controversy between the shipper and the carrier; and when resolved in favor of the shipper the extent of his damages on a particular shipment is a mere matter of calculation, wholly incidental to the controversy."

At common law one who had paid an excessive rate could ordinarily maintain a suit to recover the excess. His cause of action obviously arose when the damages were incurred; that is, when he was compelled to pay that rate. · Prior to such payment he had no common-law remedy because he had suffered no injury. The contract obligation to pay the excessive charge did not damage him, because that obligation was unenforceable as to the excess above a reasonable charge.

But such an action can no longer be maintained, as the Supreme Court decided in the Abilene Case, supra. The present obligation is statutory and not contractual. The shipper is now bound to pay the full tariff rate, even though it be unreasonable, and is therefore deprived of his former defense, if suit be brought to enforce payment of the tariff rate, unless the statute makes provision for his relief. It follows from this change in the law that, whether he actually pays the tariff rate or only incurs the obligation to do so, he can neither sue for damages in the one case nor on the other defend a suit for the tariff charge, unless the Commission shall have found that such tariff rate was unreasonable, and the extent to which it was unreasonable, when his property was transported.

. The regulating statute gives the shipper a right to reparation, that is, a right to complain to the Commission and, if the facts justify, obtain its findings and order accordingly. The order in such case is not the real basis of his suit or defense at law, but rather a condition precedent thereto. In other words, the shipper may complain of a tariff rate not only to secure its reduction for the future, but also, if his traffic has moved under that rate, to have the Commission determine what would have been a reasonable rate thereon; and, as respects the authority of the Commission, it would not matter whether the rate had been paid or partly paid or remained wholly unpaid. If paid, the report and findings of the Commission would fix the portion he was entitled to have refunded; if not paid, his statutory obligation would be ascertained.

· The nature of the order awarding damages in connection · with the reduction of the rate might therefore vary according to the situation at the time the Commission made its report. If payment had been made, the order would require the carrier to refund the excessive amount, and the shipper could then sue at law for his damages, offering the order as prima facie proof of his case. If payment had not been made, the only reparation that the shipper could secure would be the finding of the Commission that the tariff rate was unreasonable, to such a degree as might be determined; and, for aught we can see, the Commission in such case could make an order which

would be available to the shipper as prima facie proof of his defense to the carrier's suit.

The cause of action before the Commission, however, is the same in either case, viz., to secure a reduction of the tariff rate and a finding as to the damages resulting from its exaction, whether in cash or in the obligation, otherwise binding, to pay the unreasonable tariff rate; and this cause of action accrues, in our judgment, not when the exaction is enforced, but when the obligation is incurred—that is, when the service is performed. Its nature remains unchanged by reason of subsequent payment, if payment was not made at the time, since such postponed payment affects only the form and not the substance of the Commission's order.

To interpret the statute as denying relief to a shipper who has not yet paid an unreasonable charge, although the carrier admits his complaint of unreasonableness and offers to remit the excess if the Commission will give its permission, would require him to go through the meaningless form of paying a sum of money to which the carrier is not entitled and which the Commission would immediately require the carrier to refund. Nevertheless, such permission must be obtained, because otherwise the refund would be unlawful on the part of both shipper and carrier. While the statute in terms provides that the Commission may order the carrier to pay damages, we do not feel required to interpret the word "pay" in the narrow sense of a money transaction. It is equally a payment, within the contemplation of this provision, to be relieved from an obligation which the law imposes; and an order to remit the excess above a reasonable charge, which the Commission has fixed, is in substance and effect an order for the "recovery of damages" within the meaning of the clause in question.

The purposes of the act as a scheme of regulation and the language of the provision in question indicate clearly that this is a limitation which operates without the aid of pleading. So far from being a defense which the carrier may or may not interpose, it is in effect a restriction upon the authority of the Commission itself, since its plain intent is to deprive that body of jurisdiction to allow reparation after the lapse of two years. A similar provision relating to claims against the United States reads as follows:

"That every claim against the United States, cognizable by the Court of Claims, shall be forever barred, unless the petition setting forth a statement of the claim be filed in the court or transmitted to it under the provisions of this act within six years after the claim first accrues." Rev. St. § 1069 (U. S. Comp. St. 1901, p. 740).

Construing this provision, the Supreme Court held that it could not be waived and need not be pleaded. Finn v. United States, 123 U. S. 232, 233, 8 Sup. Ct. 82, 31 L. Ed. 128.

The conclusion we have reached in this case is supported, in some measure at least, by a further consideration. The ruling of the Commission in the Blinn Case is more than the decision of a particular controversy; it is also the administrative construction of the law by the tribunal charged with its enforcement. It is now nearly 2½ years

193 F.—43

since this ruling was promulgated. During that time it has been applied in numerous instances and come to be widely known and generally accepted. Under such circumstances the ruling should not be set aside, except for the most convincing reasons, and such reasons have not, in our judgment, been made to appear in this case. New York, N. H. & H. R. R. v. Interstate Com. Com'n, 200 U. S. 401, 26 Sup. Ct. 272, 50 L. Ed. 515.

Believing that the Commission was right in rejecting petitioner's claim, and agreeing substantially with the views expressed by Commissioners Lane and Harlan in the Blinn Case, we see no occasion for more extended discussion. It follows that the petition herein should be dismissed, with costs, and it will be so ordered.

ARCHBALD, Judge (concurring). [3] I agree that the petition should be dismissed, but not on the ground that the proceedings before the Commission were not in time, on which I do not undertake to pass. The government has moved to dismiss for the reason that as the case stands there is no order of the Commission to be reached; and that all, in effect, that we are asked to do is to give a construction to the statute different from that expressed by the Commission, which, aside from an actual adjudication, it is not our province to do. This motion, if well taken, cannot be disregarded, and in my judgment it clearly is.

The petitioner was not a complainant before the Commission. The proceedings there were instituted by the carrier and consisted of a petition asking leave to make reparation for an excessive freight charge which had been admittedly exacted on a single shipment some time before. The Commission refused to entertain the petition on the ground that according to its previous ruling in Blinn Lumber Co. v. Southern Pacific R. R., 18 Interst. Com. Com'n R. 434, it was too late, more than two years having elapsed since the goods were shipped and the excessive charge made, although it was within two years of the time when the rate was paid. The present petition is by the shipper, and, after setting forth the facts, complains that the construction so placed by the Commission on section 16 of the Interstate Commerce Act, that a cause of action on a claim for reparation accrues within the meaning of the law on the date when the freight is shipped, and is barred unless complaint is made to the Commission within two years from that time, is erroneous, and should be set aside and held for naught by this court. The prayer is that "the petition be heard and granted," and that the petitioner "be permitted to file its claim for reparation with the Commission and have all other and proper relief."

The case has been submitted on briefs; counsel for the petitioner not being able to be present. The question involved is an important and difficult one, and, for a correct solution, needs all the light possible by way of oral argument, and we lack that valuable aid. No merely advisory opinion is to be indulged in, and that, having regard to the record, is all, as it seems to me, that would result here. As already stated, the shipper made no complaint to the Commission.

The carrier simply asked leave to redress what it had done, by repaying the excess charge. It may be that this practice is sanctioned by the statute, but it cannot be made to take the place of that which is required of the shipper before he has ground for coming here. Where the shipper has a grievance, he is to apply to the Commission (section 13), setting forth his cause of complaint; the carrier being called on to satisfy it or show cause why it should not. And if the Commission, after a hearing (section 16), decides that the shipper is entitled to damages, an order is to be made on the carrier to pay by a day certain, which the shipper, on failure of the carrier to comply, may enforce by proceedings against it in court. It is with regard to complaints of this character that it is provided that they shall be filed with the Commission "within two years from the time the cause of action accrues and not after"; the meaning of which is the subject of controversy here.

The essence of the proceedings which are thus provided for by the statute is to be maintained, and this calls for a complaint by the shipper as the fundamental thing. A petition by the carrier for leave to make good to the shipper that which is the subject of complaint is not a substitute therefor. The closer the statute is adhered to the less chance is there to go astray. The difficulty is that neither the issue nor the outcome in the two proceedings is the same. The one is adversary, however the carrier may come in and admit it, and looks to an order which the carrier is required and may be compelled to obey; the other merely seeks permission to make redress, which, being sanctioned, if at all, by reason of the general supervision of the Commission over the affairs of interstate carriers, is more or less a matter of discretion, and upon being refused leaves the parties practically as they were before. Where the shipper complains, and an order in his favor is made, he has something on which he can proceed. Or, if it is refused, under our ruling in the Proctor & Gamble Case, 188 Fed. 221, upon a proper showing he would have ground for relief here. But where on application of the carrier the right to make reparation is denied, there is no order adverse to the shipper, in contemplation of law, however much it may stand in the way of his getting his money in practical effect, the carrier without the approval of the Commission not caring to take the risk.

It cannot be said, in other words, that, by the refusal of the petition of the carrier, the shipper is denied a right which he is entitled to maintain. It is still open to him to make his complaint to the Commission and get a ruling thereon. And it is only the attitude already taken by that body, or, as it is charged in the petition, the construction put by it on the statute, which stands in the way. But complaint might just as well be made of the ruling in the Blinn Lumber Case, on which the Commission relies; that being where the trouble begins. The right to file a claim for reparation with the Commission, which is prayed for, is thus, in fact, in the petitioner's own hands. There are other considerations which are opposed to a petition by the carrier being taken as the equivalent of a complaint by the shipper, as, for instance, if the shipper is not content with the reparation proposed,

a situation with which on any such basis it would be awkward to deal. It is difficult to see also, how, if the carrier is willing to make reparation and the Commission is satisfied that there is no collusion, the matter of time should stand in the way. But without enlarging further, it seems to me that only by the most extreme construction can the rejection of the carrier's petition be regarded as an order of the Commission, over which we have jurisdiction, and with respect to which at the instance of the shipper we can grant relief and particularly the relief here asked; and that the motion to dismiss should be granted for this reason, but not for the reason that the petition presented by the carrier to the Commission was not in time.

CARLAND, Judge (dissenting). I am unable to concur in the result reached by the majority. Section 16 of the act to regulate commerce provides:

"That if, after hearing on a complaint made as provided in section thirteen of this act, the Commission shall determine that any party complainant is entitled to an award of damages under the provisions of this act for a violation thereof, the Commission shall make an order directing the carrier to pay to the complainant the sum to which he is entitled on or before a day named. * * * All complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues. * * *"

By the very language of the statute itself, the two-year limitation only applies to complaints for the recovery of damages; therefore it cannot be claimed that Congress intended to fix any limitation as to complaints where no damages were claimed. It is true that section 13 of the act provides that no complaint shall be dismissed because of the absence of direct damage to the complainant, but this last provision has no application to complaints which have for their only object the recovery of damages; otherwise, such a complaint could not be dismissed even if no damage was shown to the complainant. There are other complaints provided for in section 13 to which this provision would be applicable. The limitation of two years being restricted to complaints for the recovery of damages, it necessarily results that a complaint which does not claim damages is not within the limitation.

The words "cause of action," mentioned in the statute, must not be confounded with the proceeding to establish such cause of action before the Interstate Commerce Commission. The cause of action must exist before the proceeding can be had. In other words, the cause of action must not be confounded with the remedy. The cause of action which exists in favor of a shipper for an unreasonable and unjust charge for the transportation of freight is the cause of action which the shipper has against the carrier; and if he has paid no unjust charge he has no cause of action against the carrier, and therefore he has no right to file a complaint before the Commission for the recovery of damages, as he has suffered no damage. The shipper's right of action in the case at bar accrued whenever the event happened which enabled it to file a complaint with the Commission showing on its face that it had suffered damage, and the shipper could not, until

it had been injured by the payment of the excessive charge, claim damages.

The attempt to sustain the result reached in this case by claiming that the obligation of the shipper to pay reasonable and just rates is now statutory and not contractual is not convincing: First, because the obligation to pay reasonable and just rates is no less contractual now than it was before the act to regulate commerce. The statute provides that all charges made for any service rendered or to be rendered in the transportation of passengers or property or in connection therewith shall be just and reasonable. So did the common law. The implied obligation to pay such charges arises from the delivery of the property of the shipper to the carrier to be transported and is as much a matter of contract now as ever; and, second, conceding for the sake of argument that the obligation to pay is statutory, this fact is in no way determinative as to when a shipper is damaged.

In the absence of a declared intention to the contrary, we must presume that Congress used the words "cause of action accrues" in the sense that, it is admitted, they are understood by the legal profession in similar cases. If Congress desires that the period of two years' limitation shall commence to run from the time the freight moves, it can easily amend the law. It is our duty to declare the law, not to make it.

The fundamental error, it seems to me, in the ruling of the Commission, arises: First, by confounding the remedy or proceeding of the shipper before the Commission with the cause of action which the shipper has against the carrier; and, second, by attempting to put a construction upon the statute of limitations that will carry out the desire and purpose of the Commission in the performance of its administrative duties. It is urged that to leave it to the carrier and shipper to determine when the payment of the excessive freight rate shall be made permits the carrier and shipper to wait until all other shippers have paid their charges and then take up the matter of reparation with the particular shipper who has been given a long credit, and thus to bring about a preference or discrimination, and perhaps a form of rebate. But even if this is so, a fear on the part of the Commission that discriminations and rebates may result from a construction of the statute different from the one established in the Blinn Case is no reason for giving a meaning to the statute at variance with all precedent. The Commission at one time decided, contrary to its former rulings, that it was illegal for a carrier to pay the actual cost of elevating grain at a transfer point, and one of the grounds of this decision was the fear on the part of the Commission that this payment would open the door for the payment of rebates and undue discriminations; but the courts seem to have held that the fear that some illegal practice might result was no reason for condemning a practice otherwise honest and lawful. Interstate Commerce Commission v. F. H. Peavey & Co., et al., 222 U. S. 42, 32 Sup. Ct. 22, 56 L. Ed. ——.

I am of the opinion that the attempt to apply the law as stated in T. & P. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup.

Ct. 350, 51 L. Ed. 553, is beside the question, as in the case at bar it is simply a question of the proper construction of an ordinary statute of limitations in which the construction of no other portion of the law seems to be involved. Nor am I persuaded that the doctrine of the Blinn Case, enunciated by the Commission in May, 1910, contrary to all their previous rulings and subject to a dissent of two of the members of the Commission, establishes any construction of the statute so long continued as to be of any weight in deciding the present case. I am of the opinion that the Commission could raise the question of the statute of limitations itself, and also that under the pleadings as they stand in this case the question whether there was a formal order is foreclosed. I am further of the opinion that the fertilizer company, being the real party in interest, may, under well-recognized principles of equity jurisdiction, maintain the petition in this case, although it filed no complaint with the Commission. Interstate Commerce Commission v. Diffenbaugh, 222 U. S. 42, 49, 32 Sup. Ct. 22, 56 L. Ed. ——; Id. (C. C.) 176 Fed. 409.

The order of the Commission should be vacated and the case heard by it on its merits.

I am authorized to say that Judge HUNT concurs in this dissent.