RUSSE & BURGESS v. INTERSTATE COMMERCE COMMISSION.

(Commerce Court. February 13, 1912.)

No. 18.

COMMERCE (§ 88*)—EXCESSIVE FREIGHT CHARGES—REPARATION—LACHES.

The Interstate Commerce Commission, finding, on complaint made to it by shippers alleging the exaction of excessive rates by carriers, that the rates were excessive, and fixing lower rates as maximum rates for the future, must give the shippers reparation for the amount of the gross overpayments not barred by the limitation imposed by Interstate Commerce Act Feb. 4, 1887, c. 104, § 16, 24 Stat. 384 (U. S. Comp. St. 1901, p. 3165), as amended by Act June 29, 1906, c. 3591, § 5, 34 Stat. 590 (U. S. Comp. St. Supp. 1909, p. 1159), and it is error for the Commission to deny reparation for anything preceding the filing of the complaint on the ground of laches predicated only on delay.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 88.*]

Petition by Russe & Burgess and others against the Interstate Commerce Commission, in which the United States and the Illinois Central Railway Company and others intervened. Demurrer to petition overruled, with leave to answer over.

For opinion of Interstate Commerce Commission, see 13 Interst. Com. R. 668. See, also (C. C.) 190 Fed. 659.

W. A. Percy, for petitioners.

P. J. Farrell, for Interstate Commerce Commission.

James A. Fowler, Asst. Atty. Gen., and Blackburn Esterline, Special Asst. Atty. Gen., for the United States.

R. Walton Moore, Frank W. Gwathmey, Robert Dunlap, and T. J. Norton, for intervening carriers.

Before KNAPP, Presiding Judge, and ARCHBALD, HUNT, CARLAND, and MACK, Judges.

ARCHBALD, Judge.    Complaint was made to the Commission by the petitioners, Russe & Burgess, with others, against numerous railroads, members of the Trans-Continental Freight Bureau, charging that excessive rates had been exacted for the transportation of lumber from Chicago and Mississippi river points to the Pacific Coast, and asking for reparation.    The Commission, upon due investigation, found that the existing rate of 85 cents per hundred pounds was more than was reasonable; that 75 cents was a reasonable rate, which it fixed as the maximum rate for the future; and that the complainants were entitled to reparation on this basis for shipments subsequent to the filing of their complaint, but not on prior shipments because of laches.    And on application for a rehearing by complainants this ruling was re-affirmed.    The petitioners thereupon filed their bill in the Circuit Court of the United States for the Northern District of Illinois, praying that the order of the Commission, so far as it denied reparation prior to the filing of the complaint, be set aside and the Commission enjoined and required to proceed and correct its order so as to allow the reparation contended for, ascertaining by appropriate action the amounts severally due to the different petitioners. There was also a prayer for a decree against the respondent railroads for the amount of the excess charges which had been paid, but it was admitted that this feature of the case could not be maintained, and it was therefore abandoned.    On the organization of the Commerce Court the case was transferred here, and—without stopping to note certain intermediate proceedings—it now comes up, on demurrer to the petition in which all parties join, on the general ground that the court has no authority to review the action of the Commission in the premises.

The exact position taken by the Commission with regard to the petitioners' claim for reparation is best shown by what it has to say of it.    After finding that the 85 cent rate complained of was an unreasonable rate and that 75 cents at most was just and reasonable and for two years thereafter not to be exceeded, and having also considered whether the shippers had in fact been damaged, the excess rate as it was contended having been added to the price at which the lumber was sold and paid for by the consumers, which contention was negatived, the Commission, speaking by Mr. Commissioner Prouty, says:

"These complainants were shippers of hardwood lumber to this destination, and they were entitled to a reasonable rate from the defendants for the service of transportation.    An unreasonable rate was in fact exacted. They were thereby deprived of a legal right, and the measure of their damage is the difference between the rate to which they were entitled and the rate which they were compelled to pay.    If complainants were obliged to follow every transportation to its ultimate result and to trace out the exact commercial effect of the freight rate paid, it would never be possible to show damages with sufficient accuracy to justify giving them.    Certainly these defendants are not entitled to this money which they have taken from the complainants, and they ought not to be heard to say that they should

not be required to refund this amount because the complainants themselves may have obtained some portion of this sum from the consumer of the commodity transported."

It was thus distinctly found that an unreasonable rate had been exacted by the carrier; that thereby the shippers were deprived of a legal right; and that they had been damaged the difference between what they had been compelled to pay and that which was just and reasonable.[1] And from this it would seem to follow that they were entitled to reparation for that which had thus been unlawfully required of them, the refusal of which relief by the Commission amounted to the denial of a legal right where it should have been upheld. The Commission meets the situation, however, as follows:

"Neither," as it is said in the report, "should these complainants be permitted to slumber upon their rights and to accumulate against these defendants a claim for damages which may not represent in its entirety an actual loss to the complainants. The burden of an unjust freight rate usually rests upon the consumer, who cannot and does not recover. Claims for reparation should therefore be promptly presented and actively prosecuted. We shall allow the complainants reparation in this case in the amount of the difference between the rate actually paid and the rate of 75 cents, which is established and which is found to have been a reasonable rate from the date of the filing of this petition; but, following the case of Thompson Lumber Co. v. Interstate Commerce Com'n, 193 Fed. 682, no reparation will be allowed by reason of shipments made previous to the date of the filing of the complaint."

The Commission, in other words, after finding all the elements of a just and legal claim in favor of the petitioners against the carriers which have intervened, has denied reparation as to anything preceding the filing of the complaint, on the ground that in its opinion the petitioners were guilty of laches. Upon what considerations laches is predicated, other than delay, is not indicated. But without dwelling upon this the fact remains that, in the face of the admitted showing made, reparation was refused as to shipments before the complaint was filed, although allowed after that date, a distinction for which there is no apparent sanction. Having made out a complete prima facie legal claim, the petitioners were entitled to have it recognized and sustained to its full extent, and reparation awarded accordingly. No doubt the claim was subject to the limitation imposed by the statute (section 16), by which complaints of this character must be filed with the Commission within two years from the time when the cause of action accrues, whatever be the construction given to that provision. Arkansas Fertilizer Co. v. United States, 193 Fed. 667. But there is nothing to sustain the idea that any part of it could be thrown out upon the equitable ground of laches. The plain question presented in every application for reparation is whether the rate which has been charged is reasonable or unreasonable; and, if unreasonable, the extent to which it is so. On this both the shipper and the carrier are entitled to an explicit finding; this, if found in favor

[1] The damage to the shipper is the difference between the lawful rate and the amount above this which he has been compelled to pay. He is necessarily injured in having to pay more than the lawful rate. C., B. & Q. R. R. v. Feintuch (C. C. A.) 191 Fed. 482.

of the shipper, being the foundation of his cause of action. Texas & Pacific R. R. v. Abilene Oil Co., 204 U. S. 437, 27 Sup. Ct. 350, 51 L. Ed. 553; Morrisdale Coal Co. v. Penn. R. R., 183 Fed. 929, 106 C. C. A. 269; Robinson v. Balt. & Ohio R. R., 222 U. S. 506, 32 Sup. Ct. 114, 56 L. Ed. ——. And, except possibly to determine the shipments to which the rate which is condemned applies, and the number of tons or pounds, or however the freight is measured, in order to get at the gross overpayment and award damages accordingly, the duty of the Commission ends with this finding. It can add nothing to the case which is so made out nor detract anything from it. The prima facie right of the shipper to reparation at the hands of the carrier, with these facts found in the shipper's favor, is thereby established, and the rest is for the courts, in case the order of the Commission is not accepted and complied with. It is not for the Commission to consider and pass upon other questions which may arise, by which the ultimate right to recover may be affected. It does not try out the case on its merits, but only the one particular phase of it. And above all is not the Commission empowered to restrict the operation of a claim in all respects valid on its face upon the supposed applicability of some equitable doctrine, such as laches?

In the present instance the order of the Commission, limiting the reparation allowed to shipments after the complaint was filed, is the result of a clear misapprehension of the law, which renders it invalid. St. Louis Hay & Grain Case, 214 U. S. 297, 29 Sup. Ct. 678, 53 L. Ed. 1004; Stickney Case, 215 U. S. 98, 30 Sup. Ct. 66, 54 L. Ed. 112; Willamette Valley Case, 219 U. S. 433, 31 Sup. Ct. 288, 55 L. Ed. 283; Inter. Com. Commission v. Union Pacific R. R., 222 U. S. 541, 32 Sup. Ct. 108, 56 L. Ed. ——. As already stated, the petitioners, judged by the Commission's own report, apparently made out a perfectly legal claim, not only as to shipments after the complaint, but also as to those before it. The right to reparation, in view of this, cannot be limited, as has been done, to that which accrued after the complaint was filed. The petitioners are entitled to go back of that, so far at least as concerns the proceedings before the Commission, until barred by the statute; and to have the merits of their claim considered and passed upon unhampered by any mistaken view to the contrary. The petition therefore on its face sets forth a good case for relief, and there is no ground for the demurrer.

The demurrer will be overruled, and the respondents directed to answer over.