## MIDSTATE HORTICULTURAL CO., INC. *v.* PENN-SYLVANIA RAILROAD CO.

No. 40.   Argued October 21, 22, 1943.—Decided November 22, 1943.

*Mr. Theo. J. Roche,* with whom *Messrs. Hiram W. Johnson, Theodore H. Roche,* and *James Farraher* were on the brief, for petitioner.

*Mr. John Dickinson,* with whom *Messrs. William F. Zearfaus, John B. Prizer,* and *Frederic D. McKenney* were on the brief, for respondent.

Mr. Justice Rutledge delivered the opinion of the Court.

The case is here on certiorari to the Supreme Court of California.   Respondent sued to recover the full amount of freight charges on twenty-one carloads of grapes shipped by petitioner over its own and connecting carriers' lines from California to stated destinations in New York and New Jersey.   The ultimate question is whether the action was brought in time under § 16 (3) (a) of the Interstate Commerce Act.   This provided:

"All actions at law by carriers subject to this Act for recovery of their charges, or any part thereof, shall be begun within three years from the time the cause of action accrues, and not after." [1]

In the application presented by this record, the question turns on whether the section's limitation can be waived by express agreement made before the period ends. The agreement was made, at petitioner's request, three days before the term expired for suing on account of the first shipment. By its terms, in consideration of respondent's forbearance to sue for a specified time, petitioner undertook not to "plead in any such suit the defense of any gen-

---

[1] 49 U. S. C. § 16 (3) (a), 43 Stat. 633. Other pertinent parts of § 16, as it was in force when this cause of action arose, were as follows:

"(3) (b) All complaints against carriers subject to this Act for the recovery of damages not based on overcharges shall be filed with the commission within two years from the time the cause of action accrues, and not after, subject to subdivision (d).

"(c) For recovery of overcharges action at law shall be begun or complaint filed with the commission against carriers subject to this Act within three years from the time the cause of action accrues, and not after, subject to subdivision (d), except that if claim for the overcharge has been presented in writing to the carrier within the three-year period of limitation said period shall be extended to include six months from the time notice in writing is given by the carrier to the claimant of disallowance of the claim, or any part or parts thereof, specified in the notice.

"(d) If on or before expiration of the two-year period of limitation in subdivision (b) or of the three-year period of limitation in subdivision (c) a carrier subject to this Act begins action under subdivision (a) for recovery of charges in respect of the same transportation service, or, without beginning action, collects charges in respect of that service, said period of limitation shall be extended to include ninety days from the time such action is begun or such charges are collected by the carrier."

As to the section's legislative history, including changes made since this suit arose, see note 15 infra.

eral or special statute of limitations."[2] Two months later, but within the extended time, petitioner finally declined to pay and respondent began this action.[3]

In all stages of the litigation petitioner has contended that the statute prohibits maintenance of the action, notwithstanding its agreement. Respondent has taken the contrary view, as have the California District Court of Appeal, one judge dissenting (124 P. 2d 902), and the California Supreme Court (21 Cal. 2d 243, 131 P. 2d 544). We think petitioner's position must be sustained. In short this is that the agreement is invalid as being contrary to the intent and effect of the section and the Act.

In classical statement, the question has been posed as whether the section operates, with the lapse of time, to

[2] After various recitals including one fixing the time within which the deferred suit might be brought, the agreement provided:

"Now therefore in consideration of the forbearance of The Pennsylvania Railroad Company to bring such a suit against the Mid State Horticultural Company, Inc. prior to October 28, 1935, the said Mid State Horticultural Company, Inc. hereby agrees that if and when The Pennsylvania Railroad Company may find it necessary to bring such an action, it, the said Mid State Horticultural Company, Inc., will not plead in any such suit the defense of any general or special statute of limitations. . . ."

[3] The following additional facts reveal more of the full character of the controversy:

In accordance with petitioner's diversion orders, respondent delivered the shipments to Jerome Distributing Company in October and November, 1932. Jerome gave respondent its checks to cover the freight and received receipted freight bills, which it used to obtain a settlement of accounts with petitioner the latter says it would not have made without them. The checks were dishonored on presentment for payment. Thereafter respondent sought without success to collect from Jerome. It sued and obtained a judgment which it could not satisfy because of Jerome's insolvency.

The time for suing on account of the first shipment expired October 28, 1935. Some time before this, respondent apparently threatened to sue petitioner and the latter requested time to investigate. Respondent acceded, and on October 25, 1935, petitioner executed the agreement not to plead the statute.

extinguish the right which is the foundation for the claim or merely to bar the remedy for its enforcement;[4] and in this case, consistently with the pattern, the debate has moved back to whether the cause of action is one created by the statute or one arising from the common law,[5] with the attributed consequence in the one case that the bar is absolute and invariable by any act of the parties, in the other that it may be waived by contract or otherwise.[6] Petitioner urges that the carrier's common law right to collect transportation charges from the shipper, which was strictly contractual, no longer exists, but has been replaced with one prescribed by the Act. This, it says, now fixes the character and dimensions of the carrier's recovery, including the time within which it may be had. Respondent however insists the Act has not superseded, but has merely modified its common law contractual right; and in this respect it asserts a distinction between cases, like this one, in which the carrier seeks the full amount of the transportation charges and others in which the suit is for only

---

[4] The inquiry traditionally is cast in this mold regardless of whether the ultimate question concerns such varied problems as the propriety of invoking the *lex fori* rather than the *lex loci*, of waiving the defense or estopping the defendant from asserting it, or of extending the period of limitation after it has once lapsed. See, e. g., Story, Conflict of Laws (8th ed.) § 582; Beale, Conflict of Laws (1935) §§ 604, 605; Goodrich, Conflict of Laws (1927) §§ 85, 86; Ailes, Limitation of Actions and the Conflict of Laws, 31 Mich. L. Rev. 474; *Bement* v. *Grand Rapids & Indiana Ry. Co.*, 194 Mich. 64, 160 N. W. 424; *Gauthier* v. *Atchison, T. & S. F. Ry. Co.*, 176 Wis. 245, 186 N. W. 619; *McLearn* v. *Hill*, 276 Mass. 519, 177 N. E. 617; *Danzer & Co.* v. *Gulf & Ship Island R. Co.*, 268 U. S. 633.

[5] Characteristically the inquiry follows this course too, however diverse the ultimate questions, in actions under wrongful death statutes, the Federal Employers' Liability Act, or directors' liability statutes, whether the limitation is imposed in the act creating the liability or a different one. See note 4 *supra* and cf. *Davis* v. *Mills*, 194 U. S. 451.

[6] Compare, e. g., *Bement* v. *Grand Rapids & Indiana Ry. Co.*, 194 Mich. 64, 160 N. W. 424, with *McLearn* v. *Hill*, 276 Mass. 519, 177 N. E. 617.

a part of them [7] or in which the shipper sues the carrier to recover excess charges paid or damages for the charging of unreasonable rates.[8]

We do not think the decision should turn on refinements over whether the residuum of freedom to contract which the Act leaves to the parties or the quantum of restriction it imposes [9] constitutes the gist of the action. Origin of the right is not *per se* conclusive whether the limitation of time "extinguishes" it or "merely bars the remedy" with the accepted alternative consequences respecting waiver. Source is merely evidentiary, with other factors, of legislative intent whether the right shall be enforceable in any event after the prescribed time, which is the ultimate question.[10] The test of creation may aid when origin is clear.[11] It is not conclusive when the source is hybrid, as is true of the carrier's contract, which has become a complex or resultant of the former freedom of contract and statutory restrictions. It does not follow from the survival of the common law elements, as respondent maintains, that Congress did not intend the limitation to be absolute. And this seems impliedly conceded when the debate shifts, as it has, to whether the policy of interstate commerce legislation contemplates the one result or the other. This is the controlling question. Respecting it

[7] E. g., *Wisconsin Bridge & Iron Co.* v. *Illinois Terminal Co.*, 88 F. 2d 459 (C. C. A.); cf. *Button* v. *Atchison, T. & S. F. Ry. Co.*, 1 F. 2d 709 (C. C. A.); *Galveston, H. & S. A. Ry. Co.* v. *Webster Co.*, 27 F. 2d 765 (D. C.).

[8] E. g., *A. J. Phillips Co.* v. *Grand Trunk Western Ry. Co.*, 236 U. S. 662; *Kansas City Southern Ry. Co.* v. *Wolf*, 261 U. S. 133.

[9] Cf. *Louisville & Nashville R. Co.* v. *Central Iron & Coal Co.*, 265 U. S. 59; *Alton R. Co.* v. *Gillarde*, 379 Ill. 308; *Pennsylvania R. Co.* v. *Lord & Spencer*, 295 Mass. 179, 3 N. E. 2d 213; *Galveston, H. & S. A. Ry. Co.* v. *Webster Co.*, 27 F. 2d 765 (D. C.).

[10] *Davis* v. *Mills*, 194 U. S. 451, 454; see also *Gregory* v. *Southern Pacific Co.*, 157 F. 113 (C. C. D. Ore.); *Osborne* v. *Grand Trunk Ry. Co.*, 87 Vt. 104, 88 A. 512.

[11] *Ibid.*

the consistent patterns of legislation followed in the Act and of judicial decision in treating problems of time limitation and related questions arising under it furnish the more persuasive indicia of Congress' intention.

Section 16 is an integral part of the Interstate Commerce Act and of the comprehensive scheme of regulation it imposes. The Act is affected throughout its provisions, with the object not merely of regulating the relations of carrier and shipper *inter se,* but of securing the general public interest in adequate, nondiscriminatory transportation at reasonable rates.[12] Accordingly, in respect to many matters concerning which variation in accordance with the exigencies of particular circumstances might be permissible, if only the parties' private interests or equities were involved, rigid adherence to the statutory scheme and standards is required. This "obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination." *Louisville & Nashville R. Co.* v. *Maxwell,* 237 U. S. 94, 97.

With setting in such a statute, § 16 expresses the specific policy of the Act with reference to the assertion of stale claims. On the section's face, this policy is one of uniformity and equality of treatment, as between carrier and shipper. The section contains not one, but several limitations. All are of short duration.[13] They apply to various kinds of relief allowed in relation to matters governed by the Act. These include proceedings before the Commission and in the courts, by both shippers and carriers. The several provisions are cast in uniform terms.[14] Not

---

[12] Cf. *Pittsburgh, C., C. & St. L. Ry. Co.* v. *Fink,* 250 U. S. 577; *Louisville & Nashville R. Co.* v. *Maxwell,* 237 U. S. 94; *Arkansas Fertilizer Co.* v. *United States,* 193 F. 667 (Commerce Court).

[13] The uniform period is now two years. Cf. note 15 *infra.*

[14] All follow the formula "within —— years, but not after." Respondent rightly says the formula itself, particularly as it includes

all were brought into the section at the same time. But the legislative history shows a constant tendency toward making them uniform in time and the purpose of placing the carrier and the shipper on equal terms in this respect.[15] Upon the face of the section nothing suggests that the limitations are to be given other than identical effects, except as the language specifies variations. In particular, contrary to respondent's contention, there is no indication

---

"and not after," is not conclusive, since it has received different constructions in respect to the present issue. Thus, the phrase appeared in the earliest English general statutes of limitations, cf. 7 Chitty's English Statutes (6th ed.) 618–619, 619–625; and is found frequently in state statutes without having the effect to outlaw waivers. Cf. *Bewley* v. *Power*, Hayes & Jones Exch. Rep. 368 (1833); *Crane* v. *Abel*, 67 Mich. 242, 34 N. W. 658; *In re Estate of King*, 94 Mich. 411, 54 N. W. 178; *Dickson* v. *Slater Steel Rig Co.*, 138 Okla. 238, 280 P. 817. On the other hand, special statutes employing the phrase have received opposing constructions. Cf. the state wrongful death statute involved in *The Harrisburg*, 119 U. S. 199. See generally 132 A. L. R. 292 *et seq.*

[15] For the succession of enactments by which § 16 (3) assumed its present form see 34 Stat. 590; 41 Stat. 491–2; 43 Stat. 633; 54 Stat. 912–13; cf. 49 U. S. C. A. § 16 (3), Historical Note. Briefly, § 16 (3) (a) was enacted first as part of the Transportation Act of 1920, 41 Stat. 491–2. Previously state statutes supplied limitations upon carriers' suits for their charges, cf. *Button* v. *Atchison, T. & S. F. Ry. Co.*, 1 F. 2d 709, and upon certain shippers' suits against carriers (not based upon an order of the Interstate Commerce Commission), cf. *Louisiana & Western R. Co.* v. *Gardiner*, 273 U. S. 280. Concurrently from 1906 the Hepburn Act (34 Stat. 590) supplied limitations upon shippers' assertion of claims for damages before the Interstate Commerce Commission and in suits to enforce its orders. Section 16 (3) assumed substantially its present form in the Act of June 7, 1924, 43 Stat. 633; although after this action was brought the Transportation Act of 1940, 54 Stat. 912–13, reduced the period for carriers' suits from three to two years, to make it conform finally with the time allowed shippers for testing the reasonableness of the carrier's rate, etc. From 1920 to 1940 this conformity had been achieved by extending the time for shippers' proceedings where the carrier in due season began suit to recover its charges. Cf. 43. Stat. 633, § 16 (3) (d).

that, in applying the section, the carrier shall be given an advantage not allowed to the shipper or one, in some instances, when the carrier is plaintiff, which it cannot enjoy in others. Rather, the section's terms, particularly in subdivision (a),[16] their uniformity in all the limitations, its legislative history, and its setting in a statute designed certainly as much for the shipper's as for the carrier's benefit and in so many respects to avoid discriminatory practices and effects, all point to uniform construction of the limitations imposed. And this, we think, is the effect of the decisions which have construed them or predecessor provisions.[17]

With a single exception, *Pennsylvania R. Co.* v. *Susquehanna Collieries Co.*, 23 F. 2d 499 (D. C.), the federal courts have not decided squarely whether an agreement such as is presented here is valid. In that suit to recover demurrage charges the court sustained and gave effect to the contract. But we think this is contrary to the general course of decision which has construed the section and predecessor limitations.

With the one exception, the decisions have fixed the pattern, in respect to a variety of issues relating to application of the limitations, that lapse of the statutory period "not only bars the remedy but destroys the liability." That is true of this Court's decisions [18] and those of the inferior federal courts.[19] It is true of suits by shippers

---

[16] The subdivision applies a single limitation to "*all* actions at law by carriers," whether "for recovery of their charges, *or any part thereof.*" (Emphasis added.) Cf. note 1 *supra.*

[17] Cf. note 15 *supra.*

[18] Cf., e. g., *A. J. Phillips Co.* v. *Grand Trunk Western Ry. Co.*, 236 U. S. 662; *United States ex rel. Louisville Cement Co.* v. *Interstate Commerce Comm'n*, 246 U. S. 638; *Kansas City Southern Ry. Co.* v. *Wolf*, 261 U. S. 133; *William Danzer & Co.* v. *Gulf & Ship Island R. Co.*, 268 U. S. 633.

[19] Cf. *Wisconsin Bridge & Iron Co.* v. *Illinois Terminal Co.*, 88 F. 2d 459 (C. C. A.); *Button* v. *Atchison, T. & S. F. Ry. Co.*, 1 F. 2d 709

against carriers and of suits by carriers against shippers.[20] It is true with respect to every limitation imposed by § 16, unless that of subdivision (a) in favor of the carrier is to be excepted when its suit is for the full amount of its charges, though not when it is for only part of them.[21]

The purport of the decisions is that Congress intended, when the period has run, to put an end to the substantive claim and the corresponding liability. The cause of action, the very foundation for relief, is extinguished. Thus, in *A. J. Phillips Co.* v. *Grand Trunk Western Ry. Co.*, this Court held the objection to the timeliness of the shipper's suit properly was raised by demurrer, and said that "the lapse of time . . . destroys the liability . . . whether complaint is filed with the Commission or suit is brought in a court of competent jurisdiction." 236 U. S. 662, 667. And it assigned as a reason for this view "the requirements of uniformity which, in this as in so many other instances must be borne in mind in construing the Commerce Act," including the carrier's obligations to adhere to the legal rate, make only lawful refunds, and refrain from discriminating among shippers "by silence or by express waiver, to preserve to the Phillips Company a right of action which the statute required should be asserted within a fixed period." *Ibid.* In *United States ex rel. Louisville Cement Co.* v. *Interstate Commerce Comm'n*, 246 U. S. 638, the conception of the *Phillips* case was applied to proceedings before the Commission, as the *Phillips* opinion had forecast. The Court held that the limitation goes to the Commission's jurisdiction, so that on the one hand it has no power to act when the time has expired, on the other mandamus will lie to compel exercise of the jurisdiction

---

(C. C. A.); *Pennsylvania R. Co.* v. *Carolina Portland Cement Co.*, 16 F. 2d 760 (C. C. A.).

[20] Cf. notes 18, 19 *supra*.

[21] Cf. note 7 *supra*.

when the period has not passed.[22]  The other decisions cited above give effect to this pattern in various applications.

Respondent attempts to avoid the conclusion to which the pattern points by urging that when the choice of extending the period is the carrier's rather than the shipper's, opportunities for discrimination disappear; and the policy otherwise embedded in § 16 does not require enforcement of its terms.  Rather, it says, to enforce them would violate the very policy upon which the *Phillips* case based the carrier's immunity to suit after the period.  And further to support this view, especially as it requires distinguishing results favorable to the carrier from those adverse to it, it is said the legislative history of the incorporation into § 16 of the limitation upon the carrier's recovery of its full charges requires it to be given a different effect from that given all other limitations created by the section.

The argument is ingenious, but not convincing.  In the absence of explicit direction, it cannot be assumed or inferred that Congress intended to adopt one policy for the carrier and another for the shipper, to give the former an absolute shield, the latter one penetrable by all the devices and occasions which interrupt or extend the period of an ordinary general statute of limitations.  Still less can it be implied that Congress intended the identical provision, subdivision (a), to work one way when the carrier sues only for part, another when it sues for the whole of its charges.  That it is prohibited to discriminate among shippers, in applying the section's limitations, does not mean that in adopting them Congress intended to discriminate against all shippers in favor of the carrier.  Nor does it mean the carrier may discriminate among shippers when it sues for all, but may not do so when it sues for only part of its charges.  The fallacy is in assuming, first, that the section reflects only the Act's general policy against

---

[22] The latter was the particular result in the case, since the court found the period had not run prior to beginning of the proceeding.

discrimination in respect to rates, rebates, etc.; and, second, that this would be made effective by treating the limitation as absolute to cut off the carrier's liability, but variable when the shipper's is involved. Neither assumption is true.

That the section does involve the statute's general policy against discrimination is clear from the opinion in the *Phillips* case and others cited. But this is true only so far as that policy is consistent with the particular policy laid down by the section, namely, that of strictly limiting the time within which claims may be asserted, as likewise appears from the decisions. In the *Phillips* case, there was no apparent clash between the two policies. Nor in this case is there more than an apparent one.

It is true the effect of holding the period invariable will be, when it has run, to relieve the shipper entirely of paying; and thus the carrier, by agreeing not to sue until later, may in effect allow the shipper a preference. But it has this within its control. And the same effect may follow when the amount unpaid is only a part of the total charge. It may follow in any case, whether the suit is for all or merely part, since the carrier, without agreement, may neglect or fail to sue and thus in effect allow the preference. Likewise, when the shipper sues, the carrier may suffer judgment by confession or default and so, in effect, accomplish the "preference," if the amount claimed is more than is rightfully due the shipper. When it is that and no more, allowing the carrier to escape by pleading the bar of the statute has the effect of permitting it to inflict a discrimination, as respondent concedes the statute requires.

The concession destroys its case. The consequences for discrimination are the same, whether the carrier or the

shipper sues, since in the one case it may create a preference by foregoing suit, in the other by failing to defend. And it is as much an answer, in the one case as in the other, that the carrier's failure to assert its rights would violate its duty to collect.[23] That duty, and the results of failure to discharge it, may be the same, regardless of whether the carrier sues or defends, depending upon whether the amount claimed is rightfully due.

The paramount policy of § 16 is to secure promptness in collection. That policy would not be promoted by construing the period as variable when it works to bar the carrier's claim but invariable when the shipper sues. Nor does a legislative history which discloses a purpose to put carrier and shipper in equal position with reference to limitations of time sustain an inference that they are to be given effects favorable only to the carrier.

We are not unmindful of the hardship to respondent in the special circumstances, though petitioner asserts it would suffer equal hardship if the decision were the other way. Nor do we ignore the strong equitable considerations which, in relation to other types of legislation not so permeated with provisions and policies for protecting the general public interest, might move against denying effect to such an agreement. But this case boils down to an old adage about sauce and geese, which need not be given citation.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

---

[23] Cf. *A. J. Phillips Co.* v. *Grand Trunk Western Ry. Co.,* 236 U. S. 662, 667–668; *Arkansas Fertilizer Co.* v. *United States,* 193 F. 667, 671 (Commerce Court).