185 P.2d 979

## BARBER v. SOUTHERN PAC. CO.

### No. 5047.

Supreme Court of New Mexico.

Oct. 14, 1947.

E. R. Wright, of Santa Fe, and Norman Hall, of El Paso, Tex., for appellant.

M. A. Threet, of Albuquerque, for appellee.

McGHEE, Justice.

The plaintiff shipped nine boxes of household goods from Harlingen, Texas, to Deming, New Mexico, under the terms of the uniform bill of lading prescribed by the Interstate Commerce Commission to govern interstate shipments. The customary route for the shipment was via the

line of the Texas & New Orleans Railroad Company from Harlingen to San Antonio, thence to El Paso, Texas, and from El Paso to Deming, New Mexico, via either the rail line of the Southern Pacific Company, or its affiliated subsidiary, Pacific Motor Trucking Company. When the shipment was being transferred in transit from one car to another at San Antonio, one item of the shipment, a crated sofa weighing 240 pounds, was by the negligent mistake of the carrier's employees, placed in a car moving to St. Louis, Missouri, over the line of the Cotton Belt route. The agent there discovered the sofa as an "over" or "astray" shipment without billing and thereupon returned it to San Antonio by the route over which it had been received, and it was from that point carried by the T. & N. O. Railroad Company to El Paso, and then by Pacific Motor Trucking Company to Deming where it arrived in bad condition and was refused by the shipper.

Claim was seasonably filed by the plaintiff for the value of the sofa in the sum of $137.50, but the defendant declined to pay more than $24, which was the value declared by his representative when the sofa was tendered for shipment at Harlingen, plus $5.83 freight charges it had collected.

On April 15, 1946, the plaintiff filed a conventional action to recover the value of the sofa, and the defendant answered admitting the goods were shipped as alleged, and that the sofa arrived in a damaged condition; it further pleaded the mistake in sending the sofa via St. Louis, and then pleaded the uniform bill of lading, that the shipper had declared a value of $10 per hundred weight on the shipment and received a reduced freight rate on account thereof, and tendered damages based on such reduced rate. It further pleaded that the suit was barred by limitations, in that it had not been filed for more than two years after it had on January 31, 1944, declined to pay more than $24.

On the trial the court below held against the defendant on its plea of limitations, and concluded that the carrier's mistake in loading the sofa into the St. Louis car instead of the El Paso car constituted a common-law "deviation," which had the effect of breaching the shipping contract, rendering the carrier liable as for conversion, and estopping it from relying upon the provisions of the uniform bill of lading as a defense to the action. Judgment was rendered for the plaintiff in the sum of $137.50, together with interest and costs of suit.

The uniform bill of lading under which this shipment moved contains a provision that suit must be instituted within two years and one day after the carrier has declined liability as authorized by Sec. 20 of the Interstate Commerce Act, 49 U.S.C.A. § 20. This provision was held reasonable in

Leigh Ellis & Co. v. Davis, 260 U.S. 682, 43 S.Ct. 243, 67 L.Ed. 460, and is not open to question.

The plaintiff seeks to avoid limitation by the fact that after the receipt of the letter of January 31, 1944, the defendant company continued to negotiate with him, and that the suit was brought in less than two years after negotiations were finally terminated on June 5, 1944. The letter of January 31, 1944, stated, among other things:

"Mr. Barber, we are anxious to serve you and give you the best repair job that is possible. We have our limitations as to material and as to cost of repairs as well. We can under no circumstances pay more than $24.00 for the repairs. The exact cost cannot be determined until it is known the quality of material that is to be used on covering the back. We feel sure though the total cost will not be more than $30.00.

"This shipment could have been released to 20¢ 50¢ or even $2.00 a pound but the rates would have been increased depending on the declared valuation. The U. S. Supreme Court has ruled that a common carrier may not accept liability greater than the declared basis when rates are assessed depending on value; to do so would be nothing less than a rebate."

Thereafter and in response to certain letters and communications passing between the plaintiff and the defendant, the question of the liability of the defendant company under the common-law deviation rule was discussed between the plaintiff and representatives of the defendant, which included an exchange of legal authorities, and continued until the 5th of June, 1944, when the claim agent of the defendant at El Paso wrote the plaintiff advising him that the claim filed had been received by him that day from his superior officer in San Francisco, with the advice that he, the claim agent, would not be permitted to pay more than the declared valuation of 10 cents a pound.

We begin a consideration of the question of limitation with the knowledge that this court in Mersfelder v. Atchison, T. & S. F. Ry. Co., 24 N.M. 518, 174 P. 989, 990, held that the defense of limitation of time in which a suit may be brought for damage to an interstate shipment may not be waived, even though the delay be caused by the carrier treating with a claimant for settlement and thereby leading him to believe his claim would be settled without suit. It is there said:

"The scope and exact effect of the federal law will be ascertained best from the construction placed upon it by the court intrusted with its interpretation. In the case of A. J. Phillips Co. v. Grand Trunk Western R. Co., 236 U.S. 662, 667, 35 S.Ct. 444, 446, 59 L.Ed. 774, the court said:

"'* * * To permit a railroad company to plead the statute of limitations as against some, and to waive it as against others, would be to prefer some and discriminate against others, in violation of the terms of the Commerce Act, which forbids all devices by which such results may be accomplished. The prohibitions of the statute against unjust discrimination relate not only to inequality of charges and inequality of facilities, but also to the giving of preferences by means of consent judgments, or the waiver of defenses open, to the carrier.'"

The Phillips case has been consistently followed by the Supreme Court of the United States and the various state courts as will appear from the annotation in 135 A.L.R. at page 612, following the case of Kirkpatrick Co. v. Illinois Central Railroad Co., 190 Miss. 157, 195 So. 692, 693, 135 A.L.R. 607. In the Kirkpatrick case it is said: "The outstanding purpose of the Commerce Act was to absolutely uproot and destroy all discriminations in interstate commerce regardless of how conceived or by what plan, scheme or device they may be sought to be accomplished. To that end, the carrier is without power to waive any valid provision of the contract constituting a defense. * * * The carrier cannot by conversations, letters and negotiations extend the time for suit beyond that limited by the bill of lading and the Commerce Act."

The latest expression of the Supreme Court of the United States on the limitation provisions of the Interstate Commerce Act that we have been able to find is contained in Midstate Horticultural Co. v. Pennsylvania Railroad Co., 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96. The carrier sued to recover the full amount of freight charges on 21 carloads of grapes shipped from California. The court stated, in part:

"The ultimate question is whether the action was brought in time under Section 16(3) (a) of the Interstate Commerce Act. This provided:

"'All actions at law by carriers subject to this Act for recovery of their charges, or any part thereof, shall be begun within three years from the time the cause of action accrues and not after.'

"In the application presented by this record, the question turns on whether the section's limitation can be waived by express agreement made before the period ends. The agreement was made, at petitioner's request, three days before the term expired for suing on account of the first shipment. By its terms, in consideration of respondent's forbearance to sue for a specified time, petitioner undertook not to 'plead in any such suit the defense of any general or special statute of limitations.' Two months later, but within the extended time, petitioner finally declined to pay and respondent began this action.

"In all stages of the litigation petitioner has contended that the statute prohibits maintenance of the action, notwithstanding its agreement. Respondent has taken the contrary view, as have the California District Court of Appeal, one judge dissenting (124 P.2d 902), and the California Supreme Court (21 Cal.2d 243, 131 P.2d 544). We think petitioner's position must be sustained."

At page 363 of 320 U.S., at page 132 of 64 S.Ct., 88 L.Ed. 96, the court further said:

"With a single exception, Pennsylvania R. Co. v. Susquehanna Collieries Co., D.C., 23 F.2d 499, the federal courts have not decided squarely whether an agreement such as is presented here is valid. In that suit to recover demurrage charges the court sustained and gave effect to the contract. But we think this is contrary to the general course of decision which has construed the section and predecessor limitations.

"With the one exception, the decisions have fixed the pattern, in respect to a variety of issues relating to application of the limitations, that lapse of the statutory period 'not only bars the remedy, but destroys the liability.' That is true of this Court's decisions and those of the inferior federal courts. It is true of suits by shippers against carriers and of suits by carriers against shippers. It is true with respect to every limitation imposed by Section 16, unless that of subdivision (a) in favor of the carrier is to be excepted when its suit is for the full amount of its charges, though not when it is for only part of them.

"The purport of the decisions is that Congress intended, when the period has run, to put an end to the substantive claim and the corresponding liability. The cause of action, the very foundation for relief, is extinguished."

The action of the California courts in upholding the contract was reversed.

In Chicago, R. I. & P. Ry. Co. et al. v. Black, Sivalls & Bryson, Inc., 194 Okl. 130, 147 P.2d 455, it was held that the limitation of time for bringing action by the shipper against the carrier for the enforcement of an order of the Interstate Commerce Commission for payment of money does not merely bar the remedy, but extinguishes the right after the fixed period has ended, and that, therefore, such time limit cannot be waived by express agreement made before the period ends.

Did limitations start running with the letter of January 31, 1944, or the letter of June 5, 1944?

In American Railway Express Co. v. Shideler, 88 Ind.App. 645, 165 N.E. 336, claim was made for loss occasioned by delay in the transportation of a carload of tomatoes. The bill of lading contained the same limitation provision as in the case

before us. The claim agent of the carrier wrote a letter to the shipper dated Oct. 28, 1921, in which it was stated, among other things, "We respectfully decline the claim." Upon receipt by the appellee of the carrier's written notice of declination of the claim, the shipper refused to take "No" for an answer, and continued to write the carrier for more than a year in an effort to show that he had a just claim. Letters passed both ways between the parties, as in this case, but at no time did the carrier agree to pay the claim or recede from the statement made in the letter of October 28, 1921. The action was filed on January 7, 1944, more than two years and one day after October 28, 1921. It was claimed by the shipper that by answering his letters he was lulled to sleep, and that the carrier was estopped to assert any right of contractual limitation. The court held that the carrier did not and could not under the Commerce Act waive the limitation of time in which the action must be begun, citing a long list of cases.

In Atlantic Coast Line R. Co. v. Wauchula Truck Growers' Association, 95 Fla. 392, 118 So. 52, 53, the claim adjuster of the carrier wrote the claimant a letter on July 9, 1923, which, after reviewing the whole matter of the claim, concluded as follows: "Without prejudice to any party concerned, and strictly in view of a compromise adjustment, I am willing to pay $300 in full settlement of this claim. If this offer is accepted, it will be necessary that you furnish me with the original paid freight bill, which you failed to send in with the other papers."

Suit was not filed until October 27, 1925, more than two years and one day after the date of the letter, and the Florida court held that the letter quoted above started the period of limitation running, and that the action was barred.

Kirkpatrick Co. v. Illinois Central Railroad Co., supra, was brought to recover damages for delay in transporting three carloads of tomatoes in interstate commerce, and the same contract and law as to limitations were involved in that case as in the one before the court. Claim was filed on October 2, 1934. On February 19, 1935, the carrier declined in writing to pay the claim, and again declined payment in writing on October 19, 1935. The action was brought more than two years after both the first and second declination. However, within two years and a day after such declination, appellee agreed to reconsider the claim of the shippers and thereupon proceeded to do so. After such further consideration, the carrier again notified the shippers that it stood upon its prior refusal to pay the claim. The action was brought within two years and a day after the giving of that notice. It was contended by the shipper, that by such agreement to recon-

sider, the carrier waived the period of limitation that had already run. In the instant case the plaintiff contends the defendant waived the time between January 31, 1944, and June 5, 1944, when he was advised the defendant would not pay more than offered January 31, 1944.

The Mississippi court, after an exhaustive citation of authorities, held that the agreement to reconsider the case did not toll the limitation provision of the contract which was placed there by authority of the Congress and the approval of the Interstate Commerce Commission. The court then said [190 Miss. 157, 195 So. 694]:

"These decisions mean that under the provisions of the Commerce Act, and the uniform bill of lading provided by the Interstate Commerce Commission, the time fixed within which claim for loss shall be filed, as well as the time fixed within which suit must be brought, are conditions precedent to liability.

"In other words, after the lapse of such time, both the right and the remedy are barred. And, they mean further that neither period of time can be waived by the carrier. Otherwise, the door would be opened to discriminations in favor of one class of shippers over another. The Commerce Act sought as far as possible to bring about not only uniformity and equality in rates but uniformity and equality in all services and practices of common carriers in interstate commerce. In considering this question, it should be borne in mind that this is not exclusively private litigation—the result affecting alone the parties to this cause. In a large measure, it is public litigation—the result of affecting the public generally, as well as the parties to the particular cause. The question as to what rights can be waived by a party to a transaction affected with a public interest, is very different where the rights of the parties alone are involved."

By virtue of the limitation period fixed by the bill of lading and the construction placed upon it by the court entrusted with its construction, the Supreme Court of the United States, as well as the state courts which are bound thereby, an iron curtain has been suspended across the path a litigant must take to the courthouse, and when it has been set in motion there is no known method of stopping its descent. The detours usually available under the doctrine of waiver seem to be also effectively blocked, so we are unable to hold that because the defendant reopened negotiations we may lift the curtain in this case and decide the controversy on its merits.

■ Instead of postponing the chore from day to day, a party who feels that he has a just cause of action under the Commerce Act would be well advised to file suit immediately following the rejection of his claim, to the end that he too may not

find his passage to the courthouse blocked by the same iron curtain that barred the way of the plaintiff in this case.

We feel we must hold that the trial court erred in failing to sustain the plea of limitations.

What we have said prevents our disposing of the case on its merits and the interesting question that would be decided. The doctrine of deviation had its origin in the maritime law. The defendant contends that the doctrine applies only where there has been a voluntary deviation as distinquished from one caused by its negligence. Our attention has not been called to any land carriage cases directly in point, but the admiralty case of Niles-Bement-Pond Co. v. Dampkiesaktieselskabet Balto, 2 Cir., 282 F. 235, directly supports the contention of the plaintiff. The following admiralty cases also indicate support of his position. The Citta Di Messina, D.C., 169 F. 472; Sidney Blumenthal & Co., Inc., v. United States, D.C., 21 F.2d 798; Calderon v. Atlas S. S. Co., 170 U.S. 272, 18 S.Ct.588, 42 L.Ed. 1033, and S. S. Willdomino v. Citro Chemical Co., 272 U.S. 718, 47 S.Ct. 261, 71 L.Ed. 491. See also Carver on Carriage of Goods by Sea, 8th Ed., Sec. 288 et seq.

The foregoing citations are recorded with the thought that they may be useful to shippers and members of the bar residing in this landlocked, arid state, who may have a similar question arise.

The judgment will be reversed and the case remanded to the District Court with instructions to set aside its judgment and render one for the defendant, and it is so ordered.

LUJAN, SADLER, and COMPTON, JJ., concur.

BRICE, C. J., not participating.