**BURNS et al. v. CHICAGO, M., ST. P. & PAC. R. CO.**

No. 14351.

United States Court of Appeals
Eighth Circuit.

Nov. 12, 1951.

Jack B. Robertson, Kansas City, Mo. (Lyman Field, Kansas City, Mo., on the brief), for appellants.

W. M. Symon, Jr., Kansas City, Mo. (R. L. Hecker, Kansas City, Mo., and Morrison, Hecker, Buck, Cozad & Rogers, Kansas City, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge and WOODROUGH and COLLET, Circuit Judges.

WOODROUGH, Circuit Judge.

The plaintiffs in this action made a shipment of 64 head of steers over defendant's railroad on October 4, 1947, from Two Dot, Montana, to Clearing Yards, Illinois. The steers did not arrive at destination until October 12, 1947. On November 4, 1947, plaintiffs filed a claim numbered 107–

84 with defendant through their agent, the Chicago Live Stock Exchange, claiming loss and damage to the live stock caused by defendant's negligence in the "total amount claimed" of $3,123.97. The "Nature of the Claim" was stated as "Loss account delayed, rough, negligent and improper handling in transit" and under the heading "Detailed statement showing how amount claimed is determined" there appeared an item "To value: 2 good average steers, $627.44", "1 steer short at destination, 1 steer crippled". The other items of the claim were for Market Loss, Excessive Shrinkage and Extra Feed at Clearing, Illinois.

On December 1, 1947, defendant replied to the claim by letter to the Chicago Live Stock Exchange as follows:

"December 1, 1947. 698345–22
"The Chicago Live Stock Exchange
U. S. Yards
Chicago 9, Illinois
                    Att: Mr. H. R. Park
"Gentlemen:
"Your claim 107–84 presented in behalf of Mr. Robert C. Burns.

"From investigation conducted, we have not been able to conclude that transportation handling is answerable for extra feeding expense at Clearing Yards or a market decline loss which item, incidentally is not supported with detailed account sales.

"Shipment was handled under available service, the 'range' or one feed schedule not being in force and our Agent at Two Dot is emphatic that he is not to blame for shipper's choice in letting stock go forward when it did, rather than holding cattle for faster service going into effect Oct. 8th.

"Shortage of one animal was occasioned by it being held at Aberdeen. This steer because of wildness, became unmanageable and was left behind, we selling it later for $222.00. On this animal and on the cripple noted at time of unloading of stock at Clearing, we can make the usual settlement, the cripple at destination being sold for $15.00.

"This would make the amount due on the claim something like $450.00 for which voucher can be prepared immediately, the balance of the loss being respectfully disallowed.

                    "Yours truly,
                    Freight Claim Agent
"HWK: mj

        "Dec. 17, 1947."

On December 23, 1947, plaintiffs' agent, the Chicago Livestock Exchange, replied by letter to the railroad as follows:
"Mr. G. W. Loderhose, F.C.A.
C. M. St. P. & P. R.R. Co.
Chicago, Ill.
"Dear Sir:

"This will acknowledge receipt of your favor of December 1st in connection with your claim 698345–22 our claim 107–84 in favor of Mr. Robert C. Burns of Kansas City, Mo.

"It is greatly to be regretted that you have seen fit to decline this claim that seems so clearly meritorious, and upon which fairly a substantial amount should be paid.

"Mr. Burns has very properly decided to place the claim in suit, and has engaged the law firm of Messrs. Mosman, Rogers, Bell & Field, 904 Bryant Building, Kansas City 6, Mo.

"We would therefore greatly appreciate your kindness in forwarding the papers submitted to you in support of this claim, including the original affidavit and the original live stock contract to Mr. Lyman Field, c/o the law firm at the address shown.

"If you will also kindly close your files, so far as this department is concerned, and handle the matter if you please with Mr. Field, greatly obliging
                    "Yours very truly."

On April 5, 1948, plaintiffs' attorney wrote the defendant as follows:

"Mr. G. W. Loderhose, F. C. A.,
Chicago, Milwaukee, St. Paul & Pacific
        Rd. Co.,
2423 Southport Avenue
Chicago 14, Illinois.
"Dear Sir:
"The undersigned firm of attorneys has been employed by Mr. Robert C. Burns, Kansas City, Missouri, to handle his claim

against your railroad in the amount of $3,128.97.

"We have been instructed to institute suit but before doing so, we would be pleased to discuss this matter with a representative of your railroad in an attempt to avoid needless litigation.

"Will you please let me hear from you at your earliest convenience as to whether or not you desire to discuss this matter further.

"Very truly yours,

Mosman, Rogers, Bell & Field

By: "

On August 6, 1948, the railroad sent the following letter to the attorneys for the plaintiffs:

"G. W. Loderhose

Freight Claim Agent

M. B. Mortensen

Ass't Freight Claim Agent

Mosman, Rogers, Bell and Field

904 Bryant Bldg.

Kansas City 6, Mo.

Att: Mr. Jos. J. Kelly, Jr.

"Gentlemen:

"Our Traveling Agent, Mr. Ducret called on you April 27, 1948, regarding claim of Robert C. Burns, involving shipment livestock billed from Two Dot, Montana, last October. According to his report, we understand you would secure further information and proof from your client but to date, have received nothing further.

"As our investigation indicates no carrier liability and in order to protect our company by provisions in the livestock contract, we are obliged to advise that claim is respectfully disallowed. We might further add that claim on this shipment was previously presented with our company by the Chicago Live Stock Exchange and also disallowed to that Exchange Dec. 1, 1947.

"Yours truly,

G. W. Loderhose,

Freight Claim Agent."

"WJN ch

On March 31, 1950, the plaintiffs commenced this action against the railroad in the Circuit Court of Jackson County, Missouri, for recovery of damages for negligent handling of the 62 steers and loss of two of them. Thereafter removal was had to the federal court which had jurisdiction on account of diversity of citizenship and amount involved.

Following the removal, the defendant asserted as a defense in its answer to the plaintiffs' complaint that defendant had disallowed plaintiffs' claim in writing on the first day of December, 1947, and that more than two years and one day had elapsed from said disallowance, to-wit, two years and four months, until the commencement of this action and that under the provisions of Title 49 U.S.C.A. § 20(11), and the uniform bill of lading issued thereunder pursuant to which the shipment was made, defendant was not liable to plaintiffs and their said claim could not be paid.

Thereafter, as a result of pre-trial conference and discovery proceedings all the writings of the parties relative to the claim for damages were produced and identified as exhibits and a hearing was had on defendant's motion for summary judgment in its favor. The court found on consideration of all the evidence that more than two years and one day had passed after the railroad disallowed the plaintiffs' claim in writing on December 1, 1947, before the plaintiffs commenced their action on March 31, 1950, and that the period of limitation contained in the Uniform Live Stock Contract under which the steers were shipped had expired before the action was commenced. It also held that the running of the limitation period was not tolled by negotiations for settlement shown to have been carried on after the railroad's letter of December 1, 1947. It concluded that no issue of fact remained for trial and sustained the defendant's motion for summary judgment. It accompanied its ruling with an opinion in writing, D.C., 100 F. Supp. 405. By the terms of the judgment entered in accord with the ruling, the action of the plaintiffs was dismissed at their costs and they appeal.

They do not question that their action was governed as to the time when it should have been brought by 49 U.S.C.A. § 20(11) which so far as pertinent reads, "Provided further, That it shall be unlawful for any such receiving or delivering

common carrier to provide by rule, contract, regulation, or otherwise a shorter period for the filing of claims than nine months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice: * * *", and by the terms of section 2 (c) of the Uniform Live Stock Contract under which the shipment was made and which are based on the above statute and so far as pertinent read: "As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property (or, in case of export traffic, within nine months after delivery at port of export), or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid."

Nor do they raise any question that the evidence submitted to and considered by the trial court on the motion for summary judgment constituted all of the evidence on the issue as to when the period of limitation within which the action could be brought was started running.

The points they argue for reversal are (1) that the court erroneously construed defendant's letter of December 1, 1947, to be a disallowance of the claim within the intendment of the Uniform Contract; that it was not so intended by the railroad, and that there was a jury question as to its true meaning, and (2) that even if the letter of December 1, 1947, constituted a disallowance, defendant revoked such disallowance and tolled the running of the period of limitation by subsequently carrying on negotiations for a compromise settlement of the claim.

1. The major part of the plaintiffs' claim amounting to $2,501.53 out of the total $3,128.97 was shown on its face to be for loss suffered in respect to the 62 steers which were delivered. That damage was claimed to have resulted from rough handling and loss of market from delay. In the first paragraph of defendant's letter of December 1, 1947, above set forth, the railroad stated in reference to that major part of the claim: "From investigation conducted we have not been able to conclude that transportation handling is answerable" for expense and loss for which the claim was made. The letter then concedes a shortage of one animal and says that "on this animal and on the cripple noted at time of unloading of stock at Clearing, we can make the usual settlement". "This would make the amount due on the claim something like $450.00 for which voucher can be prepared immediately, the balance of the loss being respectfully disallowed."

The trial court held that "the inevitable legal effect of said letter of December 1, 1947, was that it pointed out to plaintiffs that defendant was only acknowledging liability for a part of the claim they had made against defendant, and the balance of loss for which they were making claim was being disallowed." The court declared that said letter "was to all intents and purposes a disallowance of the claim plaintiffs made against defendant and that seems to be the only conclusion that can be rationally apprehended therefrom."

The court further stated in its opinion: "Considering the contents of defendant's letter of December 1, 1947, in light of the claim previously made by plaintiffs against defendant; the interpretation given to said letter by plaintiffs' agent; and the subsequent statements of plaintiffs' counsel, that plaintiffs had authorized them to institute suit on said claim after receipt thereof by plaintiffs, we believe that it is clearly established in the instant case so as to permit of no equivocation that all

parties hereto understood that when negotiations looking to a compromise of plaintiffs' claim were subsequently entered into, said letter was considered as having been a disallowance of plaintiffs' said claim by defendant. In a case where disallowance was less clearly stated than in this one, Tribby v. Chicago & N. W. Ry. Co., 64 S.D. 25, 264 N.W. 185, 186, the Court said, 'True, defendant does not state in so many words, nor in the language contained in the bill of lading, that plaintiff's claim was disallowed either in whole or in part, but we think it is sufficient to convey the understanding that such was defendant's meaning, and that it was so understood by the plaintiff is clear from the fact that he immediately commenced his action.' "

We have considered the argument made for appellants to the effect that the letter was ambiguous and was insufficient to start the running of the limitation period because of the way it was worded but we are in accord with the conclusion of the trial court that the letter declared a disallowance of the claim and started the running of the statutory period for suit. The following cases lend support to the conclusion: Tribby v. Chicago, N.W.R., 64 S.D. 23, 264 N.W. 185; Atlantic Coast Line R. Co. v. Wauchula Truck Growers Ass'n, 95 Fla. 392, 118 So. 52; Barber v. Southern Pacific Company, 51 N.M. 396, 185 P.2d 979.

■ 2. The letter of plaintiffs' agent of December 23, 1947, supra, after expressing regret that the railroad had seen fit to decline the claim, announced the decision to place the claim in suit and stated that a law firm had been engaged. The evidence was that the law firm instead of commencing suit carried on negotiations and correspondence with the railroad looking to settlement of the claim. Offers of settlement were made by the railroad company (always less than the amount of the claim), but the trial court held that "The limitation period having commenced to run from and after receipt by plaintiffs of defendant's letter of December 1, 1947, the running thereof could not be tolled by any subsequent negotiations between the parties such as are here revealed."

Although it is earnestly contended for appellants here that the subsequent negotiations carried on by the railroad and its conduct and offer of settlement (for less than the claim) amounted to a rescinding, revoking or withdrawal of its disallowance of plaintiffs' claim and tolled the running of the limitation period, we think the precedents are clearly to the contrary and the holding of the trial court was without error.

In 13 C.J.S., Carriers, § 243, the text reads as follows: "Since the decision of the supreme court of the United States in Georgia, F. & A. Ry. Co. v. Blish Milling Co., 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948, which involved the waiver of a stipulation for making a written claim, considered above in § 241, it has frequently been held or recognized that the carrier may not, in case of an interstate shipment, waive a provision in a contract of shipment limiting the time within which suit for loss or injury must be brought notwithstanding the alleged waiver occurs before the time limit has expired. The view has been taken that such a waiver would constitute an invalid discrimination * * *".

In Midstate Horticultural Co. v. Pennsylvania Railroad Co., 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96, the Supreme Court had before it the question of whether a shipper could effectively enter into an agreement to waive the statute of limitations set out in Sec. 16(3) (a) of the Interstate Commerce Act, 49 U.S.C.A. § 16 (3) (a), limiting the time within which a carrier must bring suit against a shipper for freight charges due. In that case, at the shipper's request, the carrier entered into an agreement by the terms of which the shipper expressly agreed not to avail itself of the defense of the statute of limitations against the carrier. When the carrier subsequently brought its action it was outlawed by the statute of limitations and the shipper, in violation of its express agreement, did plead the statute as a defense. The Supreme Court held the

statute was a bar to the carrier's action, holding that neither the carrier nor the shipper could waive the statute, or estop itself in any way from asserting the statute as a defense. The court stated, 320 U. S. loc. cit. 364, 64 S.Ct. loc. cit. 132 "The purport of the decisions is that Congress intended, when the period has run, to put an end to the substantive claim and the corresponding liability. The cause of action, the very foundation for relief, is extinguished." In deciding that case, the converse of the case at bar in that the railroad instead of the shipper was the plaintiff, the Supreme Court indicated that the same reasoning applies to all the limitations periods in the Interstate Commerce Act. Stating that it was not unmindful of the hardship to the carrier in the particular case, the court concluded its opinion, "But this case boils down to an old adage about sauce and geese, which need not be given citation." Cf. William Danzer & Co. v. Gulf & Ship Island R. Co., 268 U.S. 633, 45 S.Ct. 612, 69 L.Ed. 1126.

In Shroyer v. Chicago, R. I. & P. R. Co., 111 Tex. 24, 222 S.W. 1095, 1096, 226 S.W. 140, the court said: "If the representatives of a railroad company could by conversations and letters and negotiations extending beyond the statutory or contract limit of time to bring suit set estoppel in operation so that the carrier could not assert and invoke the statutory right given it, which is part of the contract of shipment, their action would, in effect, amount to the equivalent of a waiver, and would operate to enable the carrier to discriminate between shippers, and thereby virtually nullify the statute."

The following cases also lend support to the ruling of the trial court: Texas & Pacific Ry. Co. v. Leatherwood, 250 U.S. 478, 479, 39 S.Ct. 517, 63 L.Ed. 1096; Blair-Baker Horse Co. v. A. T. & S. Fe Ry. Co., Mo.App., 200 S.W. 109; Cohen v. Texas & N. O. R. Co., 303 Ill.App. 606, 25 N.E.2d 562; N. Pelaggi & Co. v. Central Vermont Ry. Co., 97 Vt. 1, 121 A. 441; Barber & Southern Pac. R. Co., 51 N.M. 396, 185 P.2d 979.

We find no case holding on such a state of facts as is here presented that the plaintiffs' action was brought in time.

The finding and conclusion of the trial court that no action could be maintained upon the plaintiffs' claim by reason of the lapse of more than two years from the date of the disallowance of the claim by the railroad company was without error.

Affirmed.