77729. J. F. BARTON CONTRACTING COMPANY v. SOUTHERN RAILWAY COMPANY.
77730. J. F. BARTON CONTRACTING COMPANY v. CENTRAL OF GEORGIA RAILROAD COMPANY.
(380 SE2d 724)

POPE, Judge.
In 1974, appellees filed suit in Clayton County Superior Court against appellant seeking to collect demurrage charges allegedly owed by appellant. These actions were brought pursuant to the provisions of the federal Interstate Commerce Act. (Currently codified as 49 USCA § 101 et seq.) No orders were filed in the cases between 1982 and 1987. To avoid the automatic dismissal of the cases mandated by OCGA § 9-11-60, appellees voluntarily dismissed the cases and refiled the actions in Fulton County (where appellant had moved its registered agent for service) pursuant to the provisions of OCGA § 9-11-61. (Georgia's renewal or saving statute). Appellant then answered and moved for judgment on the pleadings, arguing that the actions were barred by the three-year statute of limitation imposed by the Interstate Commerce Act for such charges (formerly codified at 49 USCA § 16 (3) (a), now found at 49 USCA § 11706 (a)), and that

application of OCGA § 9-11-61 to this federal cause of action was improper. The trial court denied the motion, and this court granted appellant's application for interlocutory review. *Held*:

Appellant argues that this case is controlled by this court's decision in *Smith v. Seaboard System R.*, 179 Ga. App. 822 (348 SE2d 97) (1986), in which the court held that Georgia's renewal statute did not apply to save a cause of action filed pursuant to the Federal Employers' Liability Act (FELA) that was dismissed automatically under the provisions of OCGA § 9-11-60. In *Smith*, this court relied on the decision of *Burnett v. N. Y. Central R.*, 380 U. S. 424 (85 SC 1050, 13 LE2d 941) (1965), to conclude that the federal policy of uniform national application of the limitation period provided in the FELA preempted Georgia's policy allowing renewal of actions. We are persuaded that the reasoning in *Smith*, supra, is applicable in the present case.

The Interstate Commerce Act, " 'being an act of the United States Congress, presents a Federal question. On all such questions the Supreme Court of the United States is the highest authority and its decisions are final' [Cit.]." *Smith* at 822. The Supreme Court in *Midstate Horticultural Co. v. Penn. R. Co.*, 320 U. S. 356 (64 SC 128, 88 LE 96) (1943), held that the limitation provision applicable to the collection of demurrage charges operates to extinguish the right of collection, and not merely to bar the remedy. *Midstate* at 364. In analyzing the question of whether parties may vary this limitation by private agreement, the court discussed the policies underlying the Interstate Commerce Act and the limitation provision applicable to the collection of demurrage charges. "[49 USCA § 11706] is an integral part of the Interstate Commerce Act and of the comprehensive scheme of regulation it imposes. The Act is affected throughout its provisions, with the object not merely of regulating the relations of carrier and shipper *inter se*, but of securing the general public interest in adequate, nondiscriminatory transportation at reasonable rates. Accordingly, in respect to many matters concerning which variation in accordance with the exigencies of particular circumstances might be permissible, if only the parties' private interests or equities were involved, rigid adherence to the statutory scheme and standards is required. . . . With setting in such a statute, [§ 11706] expresses the specific policy of the Act with reference to the assertion of stale claims. . . . [T]his policy is one of uniformity . . . of treatment . . . ." *Midstate* at 361 (Paragraph indention omitted.) "The paramount policy of [§ 11706] is to secure promptness in collection." Id. at 367.

"The period of time within which an action may be commenced is a material element in [the] uniformity of operation [of a statute] which Congress would not wish to be destroyed by the varying provi-

sions of the state statutes of limitation. The incorporation of variant state saving statutes would defeat the aim of a federal limitation provision designed to produce national uniformity." (Punctuation and citation omitted.) *Burnett*, supra at 433.

Based upon these principles, we hold that OCGA § 9-11-61 cannot operate to save a cause of action for collection of demurrage charges filed pursuant to the Interstate Commerce Act. The deliveries upon which these actions are based occurred in 1972 and 1973. The limitation contained in 49 USCA § 11706 (formerly 49 USCA § 16(3)), is measured forward from the time of delivery. *Atchison, Topeka &c. R. Co. v. Benchcraft, Inc.*, 381 FSupp. 603, 604 (W.D. Mo. 1974). This method of measuring a limitation "is contrary to all judicial concepts of when a cause of action accrues." Id. at 604. "Congress simply has discarded traditional judicial concepts in favor of the . . . uniform statutory period of delivery as the start of the limitation period." Id. at 605. (Punctuation and citation omitted.)

Appellees had from 1974 to 1987 to prosecute their right of claim. They argue that they are in the position of having to rely upon the Georgia renewal statute solely because of the "unique" feature of Georgia law providing for automatic dismissal. Not to allow them to use the renewal statute would actually *create* non-uniformity because their cases would never have been threatened by automatic dismissal in federal court, appellees argue. We are totally unpersuaded by such arguments.

OCGA § 9-11-60 places a mandatory burden upon a plaintiff to obtain a written order of continuance or other written order at some time during a five-year span and see that it is entered in the record. *Swint v. Smith*, 219 Ga. 532 (1) (134 SE2d 595) (1964). Although appellees argue that they have actively pursued the cases and are victims of the crowded docket in Clayton County, we cannot avoid the conclusion that their failure to get an order within the five-year span from 1982 to 1987 does constitute "sleeping on their rights," even though they did attempt to get an order placing them on the trial calendar one week before the five-year automatic dismissal was due to take effect.

The policy regarding the collection of demurrage charges is clear. Congress has mandated a uniform three-year period from the time delivery was made to bring an action. Once brought, a carrier must move diligently to prosecute the action. Thirteen years should be sufficient to conclude such an action. The trial court erred in refusing to grant appellant's motion for judgment on the pleadings.

*Judgments reversed. McMurray, P. J., and Benham, J., concur.*

DECIDED MARCH 9, 1989 —
REHEARING DENIED MARCH 23, 1989 —

*Young & Murphy, Robert G. Young,* for appellant.
*Troutman, Sanders, Lockerman & Ashmore, Rebecca G. McLemore, Kevin C. Greene,* for appellees.