**JENNINGS WATER, INC., Plaintiff,**

v.

**CITY OF NORTH VERNON, INDIANA, et al., Defendants.**

**CSL Utilities, Inc. and CSL Community Association, Inc., Intervenors.**

**No. NA 87–204–C.**

United States District Court,
S.D. Indiana,
New Albany Division.

March 29, 1988.

Peter Campbell King, Columbus, Ind., Randolph L. Seger, Indianapolis, Ind., for plaintiff.

Mark J. Dove, North Vernon, Ind., for defendants.

Mark E. Bell, Indianapolis, Ind., for intervenors.

## ENTRY

DILLIN, District Judge.

This cause is before the Court on cross-motions for summary judgment by plaintiff, Jennings Water, Inc., and intervenors, CSL Utilities, Inc. and CSL Community Association, Inc. For the following reasons, plaintiff's motion for summary judgment is granted, and intervenors' motion for summary judgment is denied.

### Background

Plaintiff Jennings Water, Inc. ("Jennings") is a rural, nonprofit water corporation operating in Jennings County, Indiana. In 1977, Jennings obtained a loan from the United States Farmers Home Administration (FmHA) to establish its water company. The term of the loan was forty years; the current outstanding balance is just under $1.5 million.

Intervenor CSL Utilities, Inc. ("CSL") is a private utility company which has been purchasing water from Jennings since Jennings' inception in 1977. CSL distributes the water it buys from Jennings to CSL's only customers, the residents of Country Squire Lakes, a subdivision in Geneva Township, Jennings County.

In 1987, in response to Jennings' increasing its rates, CSL investigated other sources of water, and in August 1987, contracted to purchase its water from defendant North Vernon Water Works Department ("North Vernon"), a municipal utility

of the City of North Vernon, Indiana. Jennings filed suit in this court in October 1987, seeking to enjoin North Vernon from selling water to CSL, pursuant to 7 U.S.C. § 1926(b), a statute that governs the federal rural water loan program. Plaintiff Jennings and intervenors, CSL Utilities and CSL Community Association, have filed cross-motions for summary judgment.

## Discussion

Summary judgment, pursuant to Rule 56, F.R.Civ.P., is proper only when there is no genuine issue of material fact. *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984). The burden of establishing the lack of any genuine issue of material fact is upon the movant, and all doubts are to be resolved against him. *Yorger v. Pittsburgh Corning Corp.,* 733 F.2d 1215, 1218 (7th Cir.1984). If the moving party has met this initial burden and the nonmoving party claims the existence of a question of fact, the Court must then determine whether a genuine issue has been established as to that fact. *Big O Tire Dealers,* 741 F.2d at 163. If the disputed facts are not material to decision of the summary judgment motion, summary judgment may nevertheless be granted. *See id.; see also Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2nd Cir. 1985); *Egger v. Phillips,* 710 F.2d 292, 296–97 (7th Cir.), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). Although Jennings and CSL each contend that disputed facts preclude the other's summary judgment motion, the Court finds that based on facts the parties do not dispute, summary judgment may be granted in this case.

Jennings argues that 7 U.S.C. § 1926(b) prohibits North Vernon from selling water to CSL and that a summary judgment should be granted enjoining this sale. Sections 1921 to 1992 of 7 U.S.C. in part establish a federal program of loans and grants to rural water associations for the "conservation, development, use, and control of water" in rural areas. 7 U.S.C. § 1926(a)(1). Section 1926(b) states:

The service provided or made available through any such [rural nonprofit water] association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

The parties do not dispute that Jennings is a rural, nonprofit water association which, by virtue of its 1977 FmHA loan, is covered by the statute. The parties also do not dispute that Jennings has been providing water to CSL since Jennings' inception in 1977. The affidavits submitted by the parties establish that Jennings currently serves approximately 2,000 customers, that CSL is Jennings' major wholesale purchaser, and that CSL distributes the water it buys from Jennings to approximately 1,150 total customers in the Country Squire Lakes subdivision—300 permanent residents and the rest seasonal.

Affidavits and records of CSL's testimony before the Indiana Public Utilities Commission, submitted by CSL, also establish that in response to Jennings' rate increase in 1987, CSL investigated other possible sources of water and, in August 1987, contracted to purchase its water from defendant North Vernon Water Works, thereby replacing Jennings with North Vernon as CSL's primary supplier of water.

CSL argues that because CSL Utilities pre-existed Jennings and because CSL Utilities has always served the Country Squire Lakes subdivision, the subdivision is in fact in CSL's "service area" and has never been in Jennings' "service area." Thus, CSL contends, its proposed change to North Vernon as its primary supplier does not decrease Jennings' service area and therefore does not violate the statute.

■ However, 7 U.S.C. § 1926(b) states that "[t]he service provided or made available through any such association shall not

be limited or curtailed...." Although CSL makes much of the facts that after 1977, it never had a written contract with Jennings or considered itself Jennings' customer, it is undisputed that for ten years Jennings provided water service to CSL for which CSL paid Jennings and that CSL in turn distributed the water to the residents of Country Squire Lakes. Thus, it is clear that the water service received by the residents of Country Squire Lakes was "provided or made available through" Jennings Water, Inc. The Court finds consequently that Jennings' loss of CSL as a major wholesale customer would curtail or limit the service that Jennings has been providing to the Country Squire Lakes area in Jennings County.

The parties do not dispute that the City of North Vernon and the North Vernon Water Works are a "municipal corporation or other public body." Thus, North Vernon's replacing Jennings as the primary supplier of water to CSL amounts to action by a municipality that curtails or limits the service provided by a rural water association indebted to the FmHA.

The one question remaining regarding application of 7 U.S.C. § 1926(b) to these facts is whether the municipal encroachment upon a rural water association's service that the statute prohibits includes a municipality contracting to supply water to an area currently supplied by a rural association. At least three federal courts have addressed a similar issue. In *Rural Water District # 3 v. Owasso Utilities Authority*, 530 F.Supp. 818 (N.D.Okla.1979), an Oklahoma federal district court enjoined a municipal public utility from expanding its sales of water outside the city limits in an area served by a rural water association indebted to the FmHA, although the court permitted the municipal utility to continue to serve pre-existing customers in the rural service area. The court applied 7 U.S.C. § 1926(b) although the encroachment was not by expansion of city boundaries or by grant of a private franchise, finding that the statute places federal limits on "the power of municipalities to sell water" when such sale "would result in competition with a Rural Water District." *Id.* at 824. As

the court noted, although an earlier Oklahoma state court case had permitted a private water supplier to continue to operate in a rural water association's service area, the state court dealt primarily with construction of the phrase "granting of a franchise" under state law and did not address the issue of the federal supremacy of 7 U.S.C. § 1926(b). *Id.* at 821–23 (citing *Comanche County Rural Water District No. 1 v. City of Lawton*, 501 P.2d 490 (Okla. 1972)).

In two more recent federal cases in Mississippi, municipalities attempted to displace rural water associations as water suppliers to specific areas through the towns' exercise of the powers of eminent domain and condemnation. *City of Madison, Miss. v. Bear Creek Water Ass'n, Inc.*, 816 F.2d 1057 (5th Cir.1987); *Moore Bayou Water Ass'n, Inc. v. Town of Jonestown*, 628 F.Supp. 1367 (N.D.Miss.1986). Both courts held that 7 U.S.C. § 1926(b) prohibited this. *Bear Creek*, 816 F.2d at 1061; *Moore Bayou*, 628 F.Supp. at 1370. In *Bear Creek*, the municipality argued that 7 U.S.C. § 1926(b) did not apply because the statute refers only to annexation or grant of a private franchise and does not specifically prohibit condemnation. 816 F.2d at 1059. In response, the Fifth Circuit stated that the statutory

> language indicates a congressional mandate that local governments not encroach upon the services provided by such associations, be that encroachment in the form of competing franchises, new or additional permit requirements, or similar means. To read a loophole into this absolute prohibition ... and allow a city to do via condemnation what it is forbidden by other means, would render nugatory the clear purpose of § 1926(b).

*Id.*

The legislative history of 7 U.S.C. § 1926(b) provides additional guidance on the scope of the statutory prohibition. Referring to 1961 revisions in the federal water loan program, the Senate Report explained:

> This provision authorizes the very effective program of financing the installation

and development of domestic water supplies and pipelines serving farmers and others in rural communities. By including service to other rural residents, the cost per user is reduced and the loans are more secure in addition to the community benefits of a safe and adequate supply of running household water. A new provision [section 1926(b)] has been added to assist in protecting the territory served by such an association facility against competitive facilities, which might otherwise be developed with the expansion of the boundaries of municipal and other public bodies into an area served by the rural system.

S.Rep. No. 566, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.Code Cong. & Admin. News 2243, 2309.

██ The clear message of the three federal cases applying 7 U.S.C. § 1926(b) and of the Senate Report is that the statute should not be construed narrowly to prohibit municipal encroachment only if technically by annexation or grant of a franchise, but should be applied broadly to protect rural water associations indebted to the FmHA from competition from expanding municipal systems. This Court finds that North Vernon's encroaching on Jennings' service by contracting to sell water to CSL clearly constitutes competition by a municipality with a rural water association. To paraphrase the Fifth Circuit, because allowing North Vernon to do by contract "what it is forbidden by other means would render nugatory the clear purpose of § 1926(b)[,]" *Bear Creek*, 816 F.2d at 1059, the Court finds that North Vernon's contract to sell water to CSL violates 7 U.S.C. § 1926(b).

CSL argues that this statute should not apply to block North Vernon's sale of water to CSL because when the federal loan was made, neither Jennings nor the FmHA relied on CSL continuing as Jennings' customer. CSL submits evidence that during the loan application process in 1977, the reports, projection, and loan conditions were amended to delete all references to CSL as a future Jennings customer. CSL contends that since neither Jennings nor

the FmHA were therefore relying on CSL's continued patronage of Jennings as necessary to secure the loan, § 1926(b) should not prevent CSL from taking its business elsewhere. In addition, CSL argues that the Indiana Utility Regulatory Commission, in recently approving CSL's plan to buy water from North Vernon, was not persuaded that Jennings' loss of CSL as a major purchaser would significantly financially harm Jennings.

██ The problem with CSL's argument is that it requires reading into the statute conditions and exceptions that simply are not there. According to CSL, the statute should be interpreted to prohibit curtailment or limitation of a rural water association's service, but only as to the customers or service areas specifically mentioned in the loan agreement; a municipality is otherwise free to take over any rural association customers or areas not mentioned in the documents and whose continued business was not expressly relied upon.

CSL's arguments here are variations on the arguments of the municipalities in both *Bear Creek* and *Moore Bayou*—that as long as the municipal expansion does not impair the rural association's ability to repay its federal loan, § 1926(b) should not be applied to enjoin the expansion. *Bear Creek*, 816 F.2d at 1059; *Moore Bayou*, 628 F.Supp. at 1369. First, in regard to the recent findings of the Indiana Utilities Commission, this Court notes that whatever the state commission found, it cannot override the application of a federal statute. *See* U.S. Const. art. VI, cl. 2 (supremacy clause). Furthermore, like the courts in *Bear Creek* and *Moore Bayou*, this Court will not read into the statute conditional language or exceptions that are not there. *Bear Creek*, 816 F.2d at 1059; *Moore Bayou*, 628 F.Supp. at 1369–70. The statute is unequivocal—it prohibits *any* curtailment or limitation of the service provided by a rural association by municipal expansion, and its applicability does not hinge on whether specific customers or areas were listed on or deleted from the loan forms or on the financial impact of the service decrease on the rural association.

Finally, CSL argues that because of Jennings' conduct in the months preceding this lawsuit, Jennings should be equitably estopped from enforcing 7 U.S.C. § 1926(b) and that summary judgment should be granted for CSL based on the doctrine of equitable estoppel. CSL alleges that from as early as July 1986, Jennings and its board of directors were well aware that if Jennings raised its rates, CSL would seek to buy its water elsewhere; that Jennings knew of the proposed transaction between CSL and North Vernon; that August 3, 1987, Jennings board meeting minutes reflect approval of the CSL–North Vernon deal; that a Jennings director orally informed a trustee of North Vernon Water Works of this approval; and that Jennings' superintendent actively assisted CSL in hooking up to North Vernon by marking Jennings' pipelines in the area so they would not be damaged. CSL contends that after several months of acquiescence and affirmative assistance by Jennings on which CSL detrimentally relied, Jennings cannot now change its position and invoke the federal statute to enjoin North Vernon's sale of water to CSL.

The doctrine of equitable estoppel, like other principles of equity, will be applied flexibly by a federal court to achieve fairness and avoid injustice. *Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42, 51 (1984). However, equitable estoppel cannot apply to block the application of a statute enacted to protect the public interest. *Scott Paper Co. v. Marcalus Mfg. Co.,* 326 U.S. 249, 257, 66 S.Ct. 101, 105, 90 L.Ed. 47, 52 (1945). As the Supreme Court explained:

> For no more than private contract can estoppel be the means of successfully avoiding the requirements of legislation enacted for the protection of a public interest.... The interest in private good faith is not a universal touchstone which can be made the means of sacrificing a public interest secured by an appropriate exercise of the legislative power.

*Id.* (citations omitted); *see also Pittsburgh, Cincinnati, Chicago & St. Louis Ry. v. Fink,* 250 U.S. 577, 583, 40 S.Ct. 27, 28, 63 L.Ed. 1151, 1153 (1919); *American Surety Co. of New York v. Gold,* 375 F.2d 523, 528 (10th Cir.1966) (doctrine of estoppel does not apply to transactions that are forbidden by statute or contrary to public policy); *Northwestern Nat'l Casualty Co. v. McNulty,* 307 F.2d 432, 442–43 (5th Cir. 1962); *Daly v. Volpe,* 376 F.Supp. 987, 992 (W.D.Wash.1974) ("the doctrine of estoppel cannot be the means of successfully avoiding requirements of legislation enacted for the protection of the public interest"), *aff'd,* 514 F.2d 1106 (9th Cir.1975); *cf. Sola Elec. Co. v. Jefferson Elec. Co.,* 317 U.S. 173, 176, 63 S.Ct. 172, 174, 87 L.Ed. 165, 168 (1942) ("local rules of estoppel will not be permitted to thwart the purposes of statutes of the United States").

■ The Court finds that the purposes of 7 U.S.C. § 1926(b) are to encourage rural water development and to safeguard the interest of the United States in having its loans repaid—both purposes aimed at promoting the public interest—rather than merely to protect the private interest of a rural water association. *See City of Madison, Miss. v. Bear Creek Water Ass'n, Inc.,* 816 F.2d 1057, 1060 (5th Cir.1987); S.Rep. No. 566, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.Code Cong. & Admin. News 2243, 2309. If Jennings were estopped from invoking the statute in this action, the result would be that North Vernon would sell water to CSL—a result that would totally violate the statutory proscription of municipal encroachment on a rural water association's service. Thus, even if CSL's allegations about Jennings' conduct are true, because as a matter of law estoppel cannot be invoked to subvert the application of a statute enacted in the public interest, CSL's motion for summary judgment must be denied.

This analysis is consistent with cases holding that a private party may not waive the operation of a statute enacted to benefit the public interest. *See Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 740, 101 S.Ct. 1437, 1445, 67 L.Ed.2d 641, 653 (1981); *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 704, 65 S.Ct. 895, 900–01, 89 L.Ed. 1296, 1307 (1945) ("a

statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy"); *Midstate Horticultural Co. v. Pennsylvania R.R.*, 320 U.S. 356, 360–61, 64 S.Ct. 128, 130–31, 88 L.Ed. 96, 101 (1943); *Millmaster Int'l, Inc. v. United States*, 427 F.2d 811, 814 (C.C.P.A.) ("A party may not waive a right granted to further a legislative policy in the public interest as manifested in the statute or its legislative history if the waiver would thwart the statutory purpose."), *modified*, 429 F.2d 985 (C.C.P.A.1970). As noted above, 7 U.S.C. § 1926(b) was enacted to benefit the public interest. Therefore, just as Jennings could not have voluntarily waived the application of the statute and authorized North Vernon to violate an act of Congress, the same result cannot be achieved by estoppel.

For the foregoing reasons, plaintiff's motion for summary judgment must be granted enjoining North Vernon from selling water to CSL while Jennings is indebted to the Farmers Home Administration, and intervenors' motion for summary judgment must be denied.

### JUDGMENT

The Court having this day filed its entry in the above captioned matter in the following words and figures: (H.I.), now therefore, in accordance therewith,

IT IS CONSIDERED AND ADJUDGED that the sale of water by defendant City of North Vernon, Indiana, by and through its Water Works Department to CSL Utilities, Inc., and/or CSL Community Association, Inc., violates 7 U.S.C. § 1926(b).

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant City of North Vernon, Indiana, by and through its Water Works Department, its agents, servants and employees, or anyone acting under their direction are permanently enjoined from selling water to CSL Utilities, Inc., and/or CSL Community Association, Inc., during the term of a loan from the United States Farmers Home Administration to Jennings Water, Inc.

IT IS FINALLY CONSIDERED AND ADJUDGED that the defendants and the Intervenors pay the costs of this action.