490

CSL UTILITIES, INC. and CSL
Community Association,
Inc., Plaintiffs,

v.

JENNINGS WATER, INC. and Richard E.
Lyng, Secretary, United States Depart-
ment of Agriculture, Defendants.

No. IP 88–1151 C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 24, 1992.

Albert George and Mark Bell, Indianapolis, IN, for CSL Utilities.

James R. Fisher, Ice Miller Donadio & Ryan, Indianapolis, IN, for CSL Community Association.

Peter Campbell King, Cline, King & King, Columbus, IN, for defendants.

BARKER, District Judge.

Plaintiff CSL Utilities is a privately-owned utility whose only business is providing and selling water to the residents of Country Squire Lakes, a residential subdivision located in Jennings County, near North Vernon, Indiana. Plaintiff CSL Community Association ("Community Association") is a not-for-profit corporation which is comprised of the Country Squires Lakes property owners. Defendant Jennings Water, Inc. ("Jennings"), is a rural not-for-profit water association operating in Jennings County and serving CSL Utilities as one of its customers. Jennings is indebted on loans obtained from the Farmers Home Administration (FmHA) to connect and expand its water services.[1] A detailed discussion of the facts of this case and the relationship between the parties can be found in this court's November 14, 1990 Entry, and in the Seventh Circuit's opinion in *Jennings Water, Inc. v. City of North Vernon*, 895 F.2d 311 (7th Cir.1989).

By this lawsuit, the plaintiffs seek a declaration that CSL's construction of a water system will not violate 7 U.S.C. § 1926(b), which provides:

> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

The parties do not dispute that Jennings is an FmHA-indebted "association" as that term is used in section 1926(b). In its November 14, 1990 Entry, this court denied Jennings' motion to dismiss on res judicata, collateral estoppel, and Article III justiciability grounds. Currently before the court are the parties' cross motions for summary judgment.

## DISCUSSION

■ The first issue which the court must address is that of ripeness. In its briefs, Jennings raised the argument that this dispute is not ripe for adjudication as required by Article III of the United States Constitution. However, the court determined in its November 14th Entry that this dispute was ripe, and that decision is and will remain the law of this case. While Jennings argued in the briefing on the pending summary judgment motions that CSL Utilities had not completed all of the necessary engineering studies to obtain from the state a permit to construct its water system, Jennings did not contest that an application to build a water system had been made by CSL Utilities. The issues in this case are clearly defined, and the "turbulent relationship between Jennings and CSL dating back to the 1977 FmHA loan to Jennings," *City of North Vernon*, 895 F.2d at 313, was remarked upon by the Seventh Circuit in 1989. Jennings has given this court no persuasive reason to reconsider its decision that this case is ripe for adjudication, and that decision will remain the law of this case.

---

1. In its November 14, 1990 Entry, this court ordered the parties to brief the question of whether the United States Department of Agriculture ("Department") was improvidently dismissed from this action. Having read the parties' submissions, the court concludes that the dismissal of the Department was proper and that no reason exists for compelling an otherwise unwilling Department to reenter this litigation.

After sifting through the policy arguments better addressed to a congressperson than a judge and the immaterial or previously resolved points of contention, the key to resolving this dispute emerges and entails an examination of these words from 7 U.S.C. § 1926(b): "during the term of such loan." As noted above, the parties do not dispute that Jennings is an "association" as that term is used in section 1926(b).

■ Section 1926(b) prohibits the curtailment or limitation of service provided by Jennings. The plaintiffs argue that Jennings' service would not be curtailed because the residents of Country Squire Lakes are customers of CSL Utilities rather than Jennings. The plaintiffs already raised and lost this argument against Jennings in prior litigation. *Jennings Water, Inc. v. City of North Vernon*, 682 F.Supp. 421, 423–424 (S.D.Ind.1988), *aff'd*, 895 F.2d 311 (7th Cir.1989). The plaintiffs are accordingly precluded from raising that issue again in this litigation. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326–327, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979).

The plaintiffs try unsuccessfully to distinguish the prior rulings on this issue by arguing that in this case, the issue is whether Jennings' service would be curtailed if CSL Utilities provided some of its own water rather than, as was at issue in the prior litigation, purchasing it from North Vernon. How this distinction is material is entirely unexplained by the plaintiffs. It is a particularly unpersuasive distinction where the plaintiffs expressly concede that the amount of water that they purchase from Jennings would be reduced. *See* CSL'S Combined Response to Jennings' Opposition to CSL's Motion for Summary Judgment and Reply to Jennings' Motion for Summary Judgment ("Combined Response"), p. 5. The conclusion is unavoidable that if the plaintiffs purchase less from Jennings, then Jennings' service would be limited or curtailed.

■ Section 1926(b) does not expressly prohibit all curtailing or limiting of an association's service, however. These limitations are prohibited under section 1926(b) when they occur "by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan." It seems clear, although it is not essential to this court's holding, that CSL is not a municipal corporation nor a public body. The only argument that Jennings develops on this point is that Community Association is the governing body of Country Squire Lakes and hence is a public body. However, Jennings gave neither case law nor an appropriate citation to the record [2] to support this proposition, and the Seventh Circuit found CSL Utilities to be a private utility in *City of North Vernon*, 895 F.2d at 313. Moreover, it is CSL Utilities, and not Community Association, which would be operating the water system and hence curtailing Jennings' service, so the possibility that Community Association might be a public body does not, in and of itself, implicate section 1926(b).

■ However, section 1926(b) also prohibits the limitation or curtailment of service "by the granting of any private franchise for similar service within such area during the term of such loan." The plaintiffs have conceded that CSL Utilities is a private franchise, *see* Combined Response, p. 7. However, the plaintiffs maintain more particularly that "CSL is a private franchise granted before the term of the 1977 FmHA loan to Jennings." *Id.* at 8.

Thus, the key to resolving this dispute is to determine whether, as required by section 1926(b), CSL Utilities was granted a private franchise "during the term of [an FmHA] loan." CSL Utilities was incorporated on December 17, 1974, and completed

2. Apparently to establish both that Community Association is a governing body and that it in turn is governed by an appointed board of directors, Jennings cites a deposition with more than 100 pages plus exhibits attached. That is not acceptable. The court's resources are limited, and they cannot be hoarded by litigants unwilling to make precise citations to the record.

its water distribution system in 1975. Plaintiffs' Brief in Support of Motion for Summary Judgment ("Plaintiffs' Brief"), pp. 1–2. At that time, CSL Utilities was supplied water by the Geneva Township Water Corp. ("Geneva"), which became indebted on FmHA loans as early as November 19, 1965. *See* Assumption Agreement, Exhibit 11 in the Appendix for Materials Submitted by Jennings Water, Inc. [JWI] in Opposition to CSL's Motion for Summary Judgment and in Support of JWI's Motion for Summary Judgment ("Appendix"). "Both the Geneva and Muscatuck [3] [Water, Inc.] systems were financed by loans from the [FmHA]." *City of North Vernon*, 895 F.2d at 312. "In 1977, Geneva and Muscatatuck Water Company merged, creating Jennings, a rural water association that now sells water to CSL." Plaintiffs' Brief, p. 2. "In October, 1977, Jennings itself obtained an additional loan from the FmHA...." *City of North Vernon*, 895 F.2d at 312.

The plaintiffs argue that only the 1977 loan originally made to Jennings should be considered in determining whether a private franchise was granted during the term of an FmHA loan, and that since CSL Utilities was granted a franchise before 1977, section 1926(b) has not been violated. Jennings responds that the pre–1977 FmHA loans made to Geneva predate CSL Utilities' existence and implicate section 1926(b)'s prohibition. Jennings provided evidence (in the form of copies of assumption agreements found in the Appendix as exhibit 11) that it assumed the FmHA indebtedness of Geneva and the Muscatatuck Water Company on October 21, 1977.

The plaintiffs do not dispute that this assumption of indebtedness occurred. Instead, they argue that Jennings is a separate entity from Geneva, and that the mere fact that Jennings might consider itself a successor to Geneva does not resolve the section 1926(b) issue.[4] However, the fact that FmHA loans to Geneva and the Mus-

catatuck Water Company were assumed by Jennings indicates that these loans continued in existence from the date of their origin (predating the incorporation of CSL Utilities) through the date in October, 1977, on which they were assumed by Jennings. The plaintiffs do not explain why an agreement between the FmHA and an association to make a loan is an operative event for analyzing section 1926(b) but an agreement between the FmHA and an association to assume a loan should have no effect.

It is true, as the plaintiffs argue, that section 1926(b) does not explicitly discuss assumptions of loans; rather, the statutory prohibition just applies where private franchises are granted during the terms of FmHA loans to associations. However, the facts of this case seem to be encompassed by the language of section 1926(b) in that a private franchise was granted to CSL Utilities during the term of FmHA loans. The plaintiffs are arguing in effect that the assumption of the loans by Jennings means that the prior existence of the loans should be completely ignored, but the plaintiffs have offered no support for departing from the plain meaning of the statutory provision to reach such a result.

This court's conclusion that FmHA loans predating CSL Utilities' franchise should be considered for section 1926(b) purposes is consonant with the broad reading of section 1926(b) given by other courts. Indeed, as noted by this court in its November 14, 1990 Entry, the Seventh Circuit has observed that "the federal statute, section 1926(b), absolutely bars any encroachment by a competing water system indebted to the FmHA." *City of North Vernon*, 895 F.2d at 318, n. 6. *See also City of Madison v. Bear Creek Water Ass'n*, 816 F.2d 1057, 1059 (5th Cir.1987) (section 1926(b) "unambiguously prohibits any curtailment or limitation of an FmHA-indebted water association's services resulting from municipal annexation or inclusion."), *cited with*

---

**3.** Court's footnote: Both "Muscatuck" and "Muscatatuck" have been used in the parties' submissions and in prior court decisions.

**4.** The plaintiffs also argue that Geneva merely piped North Vernon's water to others, but they do not explain (and this court cannot see) why this description of Geneva's service is relevant to understanding section 1926(b).

*approval in Glenpool Utility Serv. v. Water District No. 2,* 861 F.2d 1211, 1214 (10th Cir.1988), *cert. denied,* 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989).

Construing section 1926(b) so as to protect Jennings from competition also accords with the legislative intent in enacting this section, which was "to assist in protecting the territory served by ... an association ... against competitive facilities...." S.Rep. No. 566, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.Code Cong. & Admin.News 2243, 2309.

The plaintiffs argue that "[t]here is no need to reach back in time and prevent competition by private franchises that predate the merger, because the FmHA took their existence into consideration when it decided the Jennings project should proceed" in 1977. Combined Response, p. 12. This argument, similar to the argument (previously raised and rejected by Judge Dillin) that Jennings was not relying on what CSL Utilities considered to be its customers, is a policy argument appropriately addressed to Congress but not material to the court's construction of section 1926(b). As Judge Dillin wrote, "The statute['s] ... applicability does not hinge on whether specific customers or areas were listed on or deleted from the loan forms or on the financial impact of the service decrease on the rural association." *Jennings Water, Inc. v. City of North Vernon,* 682 F.Supp. at 425.

The plaintiffs also argue that since their proposed water system does not encroach on the service provided by Geneva, and since CSL Utilities had its own customer base before Jennings came into existence, the Geneva FmHA loans should not prohibit their project. The plaintiffs offer no support for this novel and narrow reading of section 1926(b), and they do not dispute that Jennings assumed Geneva's FmHA loans and that Jennings is "made up of Geneva and Muscatatuck." Combined Response, p. 10. The plaintiffs do argue that the Country Squire Lakes customers always belonged to CSL Utilities, an argument which, as noted above, *see supra* p. 4, the plaintiffs already lost. In the end, it is undisputed that Jennings' service to CSL Utilities would be curtailed if CSL Utilities were to decrease the amount of water it received from Jennings by supplying its own. Section 1926(b) prohibits this result.

The plaintiffs contend that in light of this prohibition, section 1926(b) works a violation of the Takings Clause of the Fifth Amendment by prohibiting the plaintiffs (and the Country Squire Lakes homeowners) to make full use of their land and water. The plaintiffs did not raise these allegations in their complaint, however, and no motion for leave to amend has been placed before the court. Moreover, Jennings is not the appropriate defendant against which to raise such a claim. Accordingly, this argument carries no weight here.

## CONCLUSION

CSL Utilities is prohibited from developing its own water system, as the effect of such a project would be that a private franchise would be curtailing the service provided by an association indebted to the FmHA, Jennings. Accordingly, the plaintiffs' motion for summary judgment is denied, and the defendant's motion for summary judgment is granted. The plaintiffs' motion to take judicial notice of a petition before the Indiana Utility Regulatory Commission, the defendant's ensuing motion to strike, and the motion to strike the Rupel affidavit, all pertaining to matters not essential to the court's resolution of this matter, are denied as moot.

It is so ORDERED.